## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

SARAH M. ROBINSON,

        Plaintiff,

v

MATTAWAN CONSOLIDATED
SCHOOL DISTRICT, RANDALL
FLEENOR, and JAY LARNER,

        Defendants.

_____/

Judge Jane M. Beckering
Magistrate Judge Phillip J. Green
No. 25-1867

SARAH M. ROBINSON
*Pro Se*
57951 Western St., Apt F2B
Mattawan, MI 49071

KENNETH B. CHAPIE (P66148)
TRAVIS M. COMSTOCK (P72025)
KATHERINE E. ROSS (P81172)
GIARMARCO, MULLINS & HORTON, P.C.
*Attorneys for Defendants*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7048
kchapie@gmhlaw.com
tcomstock@gmhlaw.com
kross@gmhlaw.com

---

## DEFENDANTS' MOTION TO DISMISS PURSUANT
## TO FED. R. CIV. P. 12(b)(1) AND (b)(6)

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES...............................................................................iii

STANDARD OF REVIEW ................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND................................................3

LEGAL ANALYSIS........................................................................................4

I.    Plaintiff Failed to Exhaust her Title VII Claims thus the Court Lacks Subject
      Matter Jurisdiction ................................................................................4

II.   Counts V-VIII Fail to State Claims for Relief and the Individual Defendants
      are Entitled to Qualified Immunity ...........................................................5

      A.    Plaintiff Fails to Plead her §1983 Claims with Specificity.................6

      B.    Supt. Fleenor is Entitled to Qualified Immunity from First Amendment
            Claims because he did not Violate Plaintiff's Constitutional Rights ................8

            1.    Plaintiff's "speech" is not Protected Because she Spoke
                  Pursuant to her "Official Duties" as an Employee of the District .........8

            2.    Supt. Fleenor did not Violate Plaintiff's Free Exercise Right
                  Because of the High Likelihood of an Establishment Clause
                  Violation ...........................................................................13

      C.    Plaintiff's 14th Amendment Claims Fail as Against the District and Supt.
            Fleenor is entitled to Qualified Immunity from those Claims .........................17

            1.    Equal Protection................................................................17

            2.    Procedural Due Process ......................................................19

III.  Plaintiff's Public Policy Violation and Defamation Claims are Barred by
      Governmental Immunity.........................................................................21

IV.   Plaintiff's Defamation Claim Fails Because Plaintiff Failed to Identify
      any False Comment................................................................................23

V.    Plaintiff's Elliott Larson Civil Rights Act Claim Fails...............................23

CONCLUSION..........................................................................................23

# INDEX OF AUTHORITIES

## **Cases**

*Am. Marriage Ministries v. Collins*, No. 3:24-CV-247, __ F.Supp.3d __,
2025 WL 2663652 (E.D. Tenn. Sept. 17, 2025) .......................................12

*Amini v. Oberlin Coll.,* 259 F.3d 493 (6th Cir. 2001)...............................2

*Arroyo-Castro v. Gasper*, No. 3:25-CV-00153 (SFR),
__ F. Supp. 3d __, 2025 WL 3063247 (D. Conn. Nov. 3, 2025)........................10,15

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...............................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................2,6

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007)..............2

*Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017)........................5

*Bd. of Regents v. Roth,* 408 U.S. 564 (1972) ...........................20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)............................2,6

*Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*,
977 F.3d 530 (6th Cir. 2020) ..................................11

*Bd. Of Educ. Of Westside Cmty. Schs. V. Mergens By & Through Mergens*,
496 U.S. 226 (1990)..................................12

*Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711 (E.D. Mich. 2021),
*aff'd*, 105 F.4th 868 (6th Cir. 2024)..................................4

*Bole v. Oldham Cnty. Bd. Of Educ.,* No. 3:24-CV-51-RGJ, 2024 WL 4151172
(W.D. Ky. Sept. 11, 2024) ..................................2,17

*Bradley v. Saranac Cmty. Schs. Bd. of Educ.*, 455 Mich. 285, 565 N.W.2d 650 (1997) ..........4

*Brown v. Chicago Bd. of Educ.*, 824 F.3d 713 (7th Cir. 2016)..................................10

*Cahall v. New Richmond Exempted Vill. Sch. Dist. Bd. Of Educ.*,
No. 1:24-CV-688, 2025 WL 2772519 (S.D. Ohio Sept. 29, 2025) ..........................2,13,16,18

*Carroll v. Knox Cnty. Bd. of Educ.*, No. 3:07-CV-345, 2010 WL 2507046
(E.D. Tenn. June 17, 2010)..................................20

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) ................................................................2

*Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Review. Comm'n*,
605 U.S. 238 (2025)................................................................................................................12

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004)........................................8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993)...................13

*Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110 (7th Cir. 2013)................................12

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ...................2,18

*Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw*, 452 F. Supp. 2d 723
(E.D. Mich. 2006)................................................................................................................2,17

*Dodson v. Wilkinson*, 304 F. App'x 434 (6th Cir. 2008) ........................................................17

*Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093 (E.D. Mo. 2006),
*aff'd,* 498 F.3d 878 (8th Cir. 2007)........................................................................................14

*Downing v. W. Haven Bd. of Ed.*, 162 F. Supp. 2d 19 (D. Conn. 2001).................................17

*Draper v. Logan Cnty. Pub. Libr.*, 403 F. Supp. 2d 608 (W.D. Ky. 2005) ...........................2,17

*Eplee v. City of Lansing*, 327 Mich. App. 635; 935 N.W.2d 104 (2019) ...............................20

*Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345 (6th Cir. 2010) .................10

*Galli v. Kirkeby*, 398 Mich. 527; 248 N.W.2d 149 (1976)......................................................22

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...........................................................1,9,10,11,15

*Ghanam v. Does*, 303 Mich. App. 522; 845 N.W.2d 128 (2014).........................................3,23

*Gonzales v. Marysville Sch. Dist./Bd. Of Educ.*, No. 08-CV-12095,
2008 WL 2080784 (E.D. Mich. May 16, 2008).........................................................................5

*Granderson v. Univ. of Michigan*, 211 F. App'x 398 (6th Cir. 2006).......................................5

*Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437 (6th Cir. 2022)...............................20

*Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850 (6th Cir. 2025) .................1,5

*Heath v. Highland Park Sch. Dist.*, 800 F. Supp. 1470 (E.D. Mich. 1992)............................20

iv

*Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011)..........................................7

*Howart v. Byron Area Sch. Dist.*, No. 04-73087, 2007 WL 1174885
(E.D. Mich. Apr. 19, 2007)...........................................................................................................20

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014)....................................................4

*Jabr v. Rapides Par. Sch. Bd. ex rel. Metoyer*, 171 F. Supp. 2d 653 (W.D. La. 2001).......14,16

*Jackson v. City of Columbus,* 194 F.3d 737 (6th Cir. 1999).........................................................2

*Jones v. Clark Cnty., Kentucky,* 959 F.3d 748 (6th Cir. 2020)
*abrogated in part on other grounds* 596 U.S. 36 (2022)..............................................................5

*Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024)....................................................................7

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) ...............................................9,10,13,15

*Klayman v. Loeb*, No. 15 CV 1683, 2016 WL 29228 (N.D. Ohio Jan. 4, 2016)......................19

*Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156 (2d Cir. 2001)...................12,15,16

*L.C. v. United States*, 83 F4th 534 (6th Cir. 2023) .....................................................................2

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993)........................13

*Machisa v. Columbus City Bd. of Educ.*, 563 F. App'x 458 (6th Cir. 2014)............................20

*Manning v. City of Hazel Park*, 202 Mich. App. 685; 509 N.W.2d 874 (1993)......................20

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ...................14,16

*Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019) ...........................................................................19

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007)................................10

*Mayhew v. Town of Smyrna, Tennessee,* 856 F.3d 456 (6th Cir. 2017) ...................................10

*McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023) ................................................................8

*Mead v. Rockford Pub. Sch. Dist.*, 800 F. Supp. 3d 836 (W.D. Mich. 2025)...........................19

*Myers v. City of Centerville, Ohio*, 41 F.4th 746 (6th Cir. 2022)...............................................9

*Nalepa v. Plymouth–Canton Comm. Sch. Dist.*, 207 Mich. App. 580,
525 N.W.2d 897 (1994) ...........................................................................................................22,23

*Nampa Classical Acad. V. Goesling*, 714 F. Supp. 2d 1079 (D. Idaho 2010),
*aff'd,* 447 F. App'x 776 (9th Cir. 2011)...................................................................14

*Nat'l Republican Senatorial Comm. V. Fed. Election Comm'n,*
117 F.4th 389 (6th Cir. 2024) (Readler, J., dissent), *cert. granted,*
145 S. Ct. 2843, 222 L. Ed. 2d 1129 (2025) ..........................................................14

*Nawrocki v. Macomb Cnty Rd. Comm'n,* 463 Mich. 143; 615 N.W.2d 702 (2000)................21

*O'Connor v. Redford Twp.,* No. 09-10792, 2009 WL 2488095
(E.D. Mich. Aug. 13, 2009) .................................................................................22

*Payton v. Detroit*, 211 Mich. App. 375; 536 N.W.2d 233 (1995) ...............................3

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) .......................13

*Phillips v. Butterball Farms, Inc.,* 448 Mich. 239; 531 N.W.2d 144 (1995)...........................22

*Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002)...................................13

*Pucci v. Nineteenth Dist. Court,* 628 F.3d 752 (6th Cir.2010) .................................20

*Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268 (6th Cir. 1988) .........................20

*Rankin v. McPherson,* 483 U.S. 378 (1987) .........................................................12

*Silver v. Cheektowaga Cent. Sch. Dist.*, 670 F. App'x 21 (2d Cir. 2016) .........................15,19

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)....................................................2

*Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 Fed. App'x 348 (6th Cir. 2014)................6

*Soper v. Hoben*, 195 F.3d 845 (6th Cir. 1999).......................................................23

*Thompson v. Cent. Valley Sch. Dist. No 365*, 163 F.4th 654 (9th Cir. 2025)..........................11

*Thompson v. Wayne County Treasurer*, 2008 WL 1986269
(Mich.Ct.App. May 8, 2008) ...............................................................................22

*Trupp v. Bank of Am., N.A.*, No. 3:19-CV-00479-GNS, 2020 WL 1815940
(W.D. Ky. Apr. 9, 2020) ......................................................................................4

*Turnquist v. Orange Cnty. DCFS*, No. 8:25-CV-01692-JLS-JDE,
2025 WL 2939712 (C.D. Cal. Sept. 17, 2025), *report and recommendation adopted,*
No. 8:25-CV-01692-JLS-JDE, 2025 WL 2938346 (C.D. Cal. Oct. 13, 2025)..........................6

*U.S. ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968 (W.D. Mich. 2003) ........................2

*Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692
(W.D. Mich. Jan. 28, 2022) ...................................................................................7,21,22

**Statutes**

MCL § 691.1407(1) ...........................................................................................................3

MCL § 691.1407(5) ........................................................................................................2,22

28 U.S.C. § 1915(e)(2)(B)(ii) ...........................................................................................5

42 U.S.C. § 2000e–5(e)(1) ................................................................................................5

42 U.S.C. § 1983 .............................................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1).....................................................................................................1,5

Fed. R. Civ. P. 12(b)(6)...............................................................................................2,17,19,21

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendants Mattawan Consolidated School District ("the District") and Superintendent Randy Fleenor[1] move to dismiss Plaintiff's complaint asserting claims under Title VII, § 1983 for alleged constitutional violations of the First and Fourteenth Amendments, and state claims, and in support state as follows:

1.      Plaintiff's Title VII claims (Counts I-III) fail because she fails to plead that she exhausted her remedies with the Equal Employment Opportunity Commission. *Hayes v. Clariant Plastics & Coatings USA, Inc.,* 144 F.4th 850, 865 (6th Cir. 2025).

2.      Plaintiff fails to adequately plead her § 1983 claims (Counts V-VIII) because she fails to identify which school official took what action. *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 Fed. App'x 348, 352 (6th Cir. 2014); *Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *4; *4, n.6 (W.D. Mich. Jan. 28, 2022).

3.      To the extent that Plaintiff asserts constitutional claims against Supt. Fleenor in his individual capacity, he is entitled to qualified immunity because:

        a.      He did not violate Plaintiff's Free Speech rights because Plaintiff spoke only as an employee of the District during her official duties when she handed out candy bags to a captive audience of school-aged children riding a bus. *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006).

        b.      He did not violate Plaintiff's Free Exercise right because restricting her from indoctrinating school-aged children through handing out religious messages inside candy bags to school-aged children riding her bus exposed the District to

---

[1] The District has not and does not employ a "Jason Larner".

liability under the Establishment Clause. *Cahall v. New Richmond Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 1:24-CV-688, 2025 WL 2772519, at *12 (S.D. Ohio Sept. 29, 2025).

c.      Further, it was not clearly established that Supt. Fleenor's actions were unreasonable given the tension between the First Amendment rights asserted and the Establishment Clause. *Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 742 (E.D. Mich. 2006); *Draper v. Logan Cnty. Pub. Libr.*, 403 F. Supp. 2d 608, 625 (W.D. Ky. 2005).

d.      Plaintiff's Equal Protection claim (Count VII) fails as a matter of law because her "primary source of substantive protection" is the First Amendment. *Bole v. Oldham Cnty. Bd. of Educ.,* No. 3:24-CV-51-RGJ, 2024 WL 4151172, at *8 (W.D. Ky. Sept. 11, 2024). And because she fails to identify any similar comparator that distributed religious messages on school property but was not disciplined or terminated. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

e.      Finally, Supt Fleenor did not violate Plaintiff's Procedural Due Process rights (Count VIII) because her remedy is a state law contract action, *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1273–74 (6th Cir. 1988), and she received due process under the Board of Education's policy through multiple meetings with the Transportation Director and Supt. Fleenor.

4.      Supt. Fleenor is entitled to absolute immunity under Michigan law from Plaintiff's tort claims in Counts IX and X. MCL § 691.1407(5); *Nalepa v. Plymouth–Canton Comm. Sch. Dist.*, 207 Mich. App. 580, 525 N.W.2d 897 (1994).

5.      Plaintiff's wrongful termination in violation of public policy claim is barred by Michigan's governmental immunity statute. *O'Connor v. Redford Twp.,* No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009); *Phillips v. Butterball Farms, Inc.,* 448 Mich. 239, 245-46; 531 N.W.2d 144 (1995).

6.      Plaintiff's defamation claim against the District is barred by Michigan's governmental immunity statute. MCL 691.1407(1); *Payton v. Detroit*, 211 Mich. App. 375, 393; 536 N.W.2d 233 (1995).

7.      Plaintiff has not established the elements of a defamation claim, as Plaintiff claims that Defendants failed to speak about her. (ECF No. 1, PageID.10, ¶¶ 97, 99). But defamation requires proof of affirmative "false and defamatory statement concerning the plaintiff… to a third party." *Ghanam v. Does*, 303 Mich. App. 522, 544; 845 N.W.2d 128 (2014).

8.      Plaintiff's Elliott-Larsen Civil Rights Claim fails as a matter of law as there is no legal authority or support for the contention that the ELCRA protects public school teachers or employees who impose their religious views on students.

9.      Defendants have no record of a "Jason Larner" working for Defendant Mattawan Consolidated School District, so alleged service on this fiction person is improper.

WHEREFORE Defendants requests that the Court dismiss Plaintiff's complaint in its entirety with prejudice.

/s/ TRAVIS  COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: February 5, 2026

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff Sarah Robinson contests her termination as a school bus driver from the Mattawan Consolidated School District ("the District"). She admits that she shared her religious beliefs by placing messages in candy bags that she offered to school-aged children – a captive audience while riding the bus – while she performed her official duties as a bus driver for the District. Thus, her speech and expression were pursuant to her official duties and raised the significant possibility of Establishment Clause liability.

The Court should dismiss her Complaint because her Title VII claims fail as a matter of law since she did not plead that she exhausted those claims. Defendants Supt. Randy Fleenor and "Jason Larner[2]" (collectively "the Individual Defendants") are entitled to qualified immunity from her First and Fourteenth Amendment claims because they did not violate any constitutional right that was clearly established. With the dismissal of all federal claims, the Court should therefore decline supplemental jurisdiction over her state law claims.

Should this Court exercise supplemental jurisdiction over the state law claims, Defendants are entitled to those claims as well. As Superintendent, Defendant Fleenor is entitled to absolute immunity from any tort claim asserted. Likewise, governmental immunity bars Plaintiff's defamation and wrongful termination claims. As such, dismissal of Plaintiff's claims against Defendants is proper as a matter of law.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(1) challenging the factual basis for subject matter jurisdiction, "a court has broad discretion with respect to what evidence to

---

[2] There is no such employee as "Jason Larner" at the District, and so any claims Jason Larner was served at the District office is inaccurate.

1

consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case**.**" *L.C. v. United States*, 83 F4th 534, 542 (6th Cir. 2023) (citation omitted). "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014) (citation omitted).

When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint or are central to the claims contained therein. See *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001). Public records and government documents are generally considered "not to be subject to reasonable dispute." *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508–14 (2002). Public records and government documents from reliable sources on the Internet qualify under the above rule. *U.S. ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

With respect to Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557. While a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (internal citations omitted).

Court must accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, but the presumption of truth does not apply to a claimant's legal conclusions, *Ashcroft*, 556 U.S. at 678. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted).

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff alleges that the District terminated her employment for her religious speech. (ECF No. 1, PageID.1, ¶¶ 1, 3). Plaintiff worked as a bus driver for 25 years for the District and transported 65 students per day on her route. (*Id.*, PageID.3, ¶¶ 16, 18). Her "expression" and "speech" consisted of "distribut[ing] small holiday candy bags" on three holidays to students on her bus containing "brief Christian messages[.]" (*Id.*, ¶ 19).

She claims that after the first occurrence she was told she could continue if the students' participation was optional and disclosed, *id.*, ¶ 26, presumably meaning disclosing to each student that the candy bags contained the Christian messages. After the second occurrence, she alleges that Supt. Fleenor reversed this "guidance" and prohibited her from handing out candy bags to school aged children that contained Christian messages. (*Id.*, ¶ 27). The third occurrence apparently took place on Good Friday in April 2025 because it was after that date that she was terminated. (*Id.*, PageID.4, ¶ 30; PageID.5, ¶ 36).

Plaintiff alleges that her "supervisor" allowed her to continue disseminating her candy bags. Plaintiff also asserts that Supt. Fleenor made statements and quotes someone's statement that "she was 'breaking federal law[.]'" However, her contentions are refuted by her termination letter.

(**Exhibit 1**).[3] Her supervisor, the Transportation Director, actually told her not to engage in "distribut[ing] unapproved religious materials to students on her bus." (*Id.*). When Plaintiff first met with Supt. Fleenor on January 27, 2025, he rejected Plaintiff's claim that she could continue her actions if "students were given a choice" and reiterated that "school employees cannot distribute religious information to students" and her actions contrary to that were "strictly prohibited." (*Id.*). Only after Plaintiff's third flagrant disregard for these directives was she terminated. (*Id.*). And this came after separate "due process" meetings with the Transportation Director and Supt. Fleenor. (*Id.*).

The District and Supt. Fleenor now move to dismiss her complaint for the failure to state claims for relief and for qualified immunity.

## LEGAL ANALYSIS

I.    **Plaintiff Failed to Exhaust Her Title VII Claims thus the Court Lacks Subject Matter Jurisdiction.**

Plaintiff asserts three claims under Title VII – Count I (Religious Discrimination), Count II (Retaliation), and Count III (Failure to Accommodate). Plaintiff fails, however, to allege that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") related to these allegations. The failure to file a charge and receive a right to sue letter deprives this Court of

---

[3] Based on Plaintiff's claims about her interactions with District administrators after each incident of disseminating the candy bags containing religious messages, "[t]he court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims." *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021), *aff'd*, 105 F.4th 868 (6th Cir. 2024). Additionally, personnel records, like a discipline letter are public records that can be obtained under Michigan's Freedom of Information Act. *Bradley v. Saranac Cmty. Schs. Bd. of Educ.*, 455 Mich. 285, 294, 565 N.W.2d 650 (1997) (personnel file documents such as "disciplinary actions" are obtainable under FOIA). The Court can permissibly consider the termination letter because the "public records refute a plaintiff's claim[.]" *Trupp v. Bank of Am., N.A.*, No. 3:19-CV-00479-GNS, 2020 WL 1815940, at *2 (W.D. Ky. Apr. 9, 2020) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)).

subject-matter jurisdiction over these Counts.

"A plaintiff generally cannot bring Title VII claims in federal court without first exhausting her administrative remedies. *See* 42 U.S.C. § 2000e–5(e)(1)." *Hayes v. Clariant Plastics & Coatings USA, Inc.,* 144 F.4th 850, 865 (6th Cir. 2025). Exhaustion is achieved when a plaintiff includes her allegations in a charge filed with the EEOC. *Id.* See also *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006) ("It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ("right-to-sue letter").") (citations omitted).

Plaintiff's Complaint is devoid of any allegations related to these two prerequisites. She does not allege that she filed a charge with the EEOC against the District. And she does not allege (or attach) a copy of a right-to-sue letter issued by the EEOC. Notwithstanding her *pro se* status, the failure to meet these two prerequisites warrants dismissal of those claims without prejudice. See, e.g., *Gonzales v. Marysville Sch. Dist./Bd. of Educ.*, No. 08-CV-12095, 2008 WL 2080784, at *1 (E.D. Mich. May 16, 2008) (dismissing *pro se* Title VII complaint for failure to exhaust pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)). Thus, as a matter of law Plaintiff's claims in Counts I-III must be dismissed pursuant to Rule 12(b)(1).

## II.    Counts V-VIII Fail to State Claims for Relief and the Individual Defendants are Entitled to Qualified Immunity.[4]

Plaintiff alleges various violations of her rights under the First and Fourth Amendments in Counts V-VIII. First, Plaintiff fails to state against whom these claims are asserted and therefore

---

[4] Counts V-VIII fail to allege any policy or custom of the District that would make it liable under *Monell*. *Jones v. Clark Cnty., Kentucky,* 959 F.3d 748, 761 (6th Cir. 2020) *abrogated in part on other grounds* 596 U.S. 36 (2022). Thus, to the extent Plaintiff attempts to claim *Monell* liability that would fail. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388 (6th Cir. 2017) ("[T]he plausibility standard of *Twombly* and *Iqbal*" apply to *Monell* allegations).

she fails to state a claim for relief under those Counts. Second, to the extent she asserts these claims against Supt. Fleenor, he is entitled to qualified immunity as to the First Amendment claims. Third, even if there is a constitutional violation of free speech or free exercise that is clearly established, the District's potential Establishment Clause liability provides its administrators with the leeway and breathing space to restrict or prohibit Plaintiff's speech in this instance. Finally, Supt. Fleenor is entitled to qualified immunity from Plaintiff's Equal Protection or Procedural Due Process claims. Thus, Counts V-VIII must be dismissed as a matter of law.

### A.  Plaintiff fails to plead her § 1983 claims with specificity

Plaintiff's allegations in Counts V-VIII fail to state with specificity whom she is asserting the claims against. (ECF No. 1, PageID.8-9). And the allegations in Counts V-VIII use only the generic term of "Defendants". (Id.). By using generic versus defendant specific factual allegations, the Plaintiff fails to adequately plead claims against the Individual Defendants under § 1983.

Plaintiff first fails to allege with specificity if Counts V-VIII are asserted against the District only, Supt. Fleenor in his official capacities, or Supt. Fleenor in his individual capacity. This prevents the District and Supt. Fleenor from knowing what claims are pled against which party. This fails to the meet the basic pleadings standards under *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). See, e.g., *Turnquist v. Orange Cnty. DCFS*, No. 8:25-CV-01692-JLS-JDE, 2025 WL 2939712, at *4 (C.D. Cal. Sept. 17, 2025), *report and recommendation adopted*, No. 8:25-CV-01692-JLS-JDE, 2025 WL 2938346 (C.D. Cal. Oct. 13, 2025) (Pleading standard not met where plaintiff failed to "indicate whether individual defendants are named in their individual or official capacity.").

In addition, "[b]ecause vicarious liability is inapplicable to § 1983 claims, a plaintiff must plead that each government-official defendant, through the **official's own individual actions**, has violated the Constitution." *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 Fed. App'x 348, 352

(6th Cir. 2014) (emphasis added). See also *Ashcroft*, 556 U.S. at 676 (A § 1983 claim "must plead that each Government-official defendant, through the **official's own individual actions**, has violated the Constitution.") (emphasis added).

That is, Plaintiff's Complaint "must allege, with particularity, facts that demonstrate what *each* **defendant** did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted; italics original; bold added). *See also Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (A plaintiff "must also show that all Defendants acted on **his or her own** to violate [plaintiff's] First Amendment rights.") (citing *Heyne*; emphasis added). This means that the Court must separately analyze the allegations to determine if a specific defendant is alleged to have violated a constitutional right. *Id.*

Where a plaintiff generically alleged that "School officials" violated constitutional rights, the claim was dismissed for failure to include a specific reference to the named defendant. *Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *4; *4, n.6 (W.D. Mich. Jan. 28, 2022), *report and recommendation adopted*, No. 1:20-CV-1207, 2022 WL 593586, *4 (W.D. Mich. Feb. 28, 2022). Similarly, where a plaintiff generically alleged that "Defendants" engaged in a conspiracy to violate his constitutional fights, the Sixth Circuit dismissed the claim because the plaintiff improperly "ascribe[d] the acts of all Individual Defendants to each individual defendant." *Heyne*, 655 F.3d at 564 (citations omitted).

Here, Plaintiff's generic reference to Defendants fails to meet the particularity and specificity necessary to assert a claim against a specific Individual Defendant. For example, the allegations do not specifically assert what each Defendant did. Thus, because Plaintiff's allegations in Counts V – VIII fail to show what specific action each Defendant took that allegedly violated her rights, the Counts must be dismissed. *Ashcroft*, 556 U.S. at 676; *Heyne*, 655 F.3d at 564.

**B. Supt. Fleenor is entitled to qualified immunity from First Amendment claims because he did not violate Plaintiff's constitutional rights.**

Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (citation omitted). The two-step analysis for considering whether qualified immunity applies is well-known. "Overcoming the invocation of qualified immunity requires [Plaintiffs] to turn a double play of sorts. [They] must show both that (1) school officials violated [their] constitutional rights, and (2) that 'the right was "clearly established" at the time of the challenged conduct.'" *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023) (citation omitted). Failure on either prong means a defendant is entitled to qualified immunity. *Id*.

**1. Plaintiff's "speech" is not protected because she spoke pursuant to her <u>"official duties" as an employee of the District.</u>**

Plaintiff alleges that she had a First Amendment and Title VII right to speak "about Jesus" to students riding her bus.[5] (ECF No. 1, PageID.9, ¶ 84). She contends that the District cannot restrict her speech since it is allegedly "viewpoint discrimination." (*Id.,* PageID.8, ¶ 80). Plaintiff claims she had to choose between her job and her faith. (*Id*., ¶ 79). Plaintiff asserts that she spoke as a private citizen on a matter of public concern and was terminated for that speech. In essence, Plaintiff asserts a claim for First Amendment retaliation. However, as a public employee whose speech occurred during her official duties, the District properly restricted her speech.

---

[5] Similar to the First Amendment, Title VII of the Civil Rights Act of 1964 does not protect public school teachers who impose their religious views on students. While Title VII protects employees from religious discrimination and requires reasonable accommodation of beliefs, it does not allow teachers to coerce students or disrupt the educational mission, as noted in guidance from the U.S. Department of Education.

While it is true that Plaintiff does not lose her First Amendment rights as a public employee, that does not mean that her "speech rights" as a bus driver "are so boundless that [she] may deliver any message to anyone anytime [she] wish[es]." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.*

"To account for the complexity associated with the interplay between free speech rights and government employment," courts first inquire about "the nature of the speech at issue" and then "engage in 'a delicate balancing of the competing interests surrounding the speech and its consequences.'" *Id.*, at 527-28 (citation omitted). Plaintiff's retaliation claim requires her to prove:

> (1) the plaintiff engaged in protected conduct, *i.e.*, constitutionally protected speech; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022) (citation omitted; cleaned up). *See also Garcetti*, 547 U.S. at 527.

Plaintiff's claim fails on the first element. For the first element, courts apply a second three-prong test. First, the employee must speak as a private citizen and not "pursuant to [her] official duties." *Myers*, 41 F.4th at 760 (citation omitted). Second, the claimed speech must be on a matter of public concern. *Id.* (citation omitted). And third, the employee's interest must outweigh the District's interest as an employer in its interest of efficiently performing its operations. *Id.* (citation

omitted). These inquiries are all questions of law. *Id.*

Plaintiff did not speak as a private citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (quoting *Garcetti*, 547 U.S. at 421) (brackets original). Determining if the claimed speech is private involves examining "both its content and context—including to whom the statement was made[.]" *Id.* (citing *Garcetti*). That is, courts examine "the speech's impetus; its setting; its audience; and its general subject matter[,]" – the "who, where, what, when, why, and how" of the speech. *Mayhew v. Town of Smyrna, Tennessee,* 856 F.3d 456, 464 (6th Cir. 2017) (citations omitted).

Plaintiff admits that the context of her speech, i.e., the setting and its audience, was in the confines of a school bus and directed at a captive audience of schoolchildren. And her official position/duty as a bus driver is the only reason that she had access to the students on her bus. The Supreme Court in *Kennedy* distinguished between religious speech made in private (after football game with no players around) and a "captive audience" that "involve[ed] students." *Kennedy*, 597 U.S. at 525. Other courts have held that First Amendment speech that may be otherwise protected is not when made "to captive audiences against the instructions of elected officials." *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 480 (7th Cir. 2007). *See also Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016) ("[A] teacher's in–classroom speech is not the speech of a 'citizen' for First Amendment purposes.") (citation omitted); *Arroyo-Castro v. Gasper*, No. 3:25-CV-00153 (SFR), __ F. Supp. 3d __, 2025 WL 3063247, at *22-23 (D. Conn. Nov. 3, 2025) (Noting that there are "several particular concerns about religious practices in public elementary and secondary schools. First, children are compelled by law to be at school and thus

10

[are] 'captive audiences.' Second, **school-age children are particularly susceptible to subtle pressure** to conform their beliefs to those of their teachers or peers.") (emphases added).

Plaintiff's official duties included interacting with students who were a "captive audience" entering or exiting her bus and could feel "subtle pressure" from a person they "trusted" (ECF No. 1, PageID.3, ¶ 18) into taking candy bags that included religious messages. Thus, Plaintiff spoke pursuant to her official duties and thus her claimed speech is not protected by the First Amendment and she fails to state a claim for relief. *Garcetti*, 547 U.S. at 418 (If public employee does not speak "as a citizen on a matter of public concern" then "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.").

Plaintiff's claim also fails the third prong, known as the *Pickering* balancing test. "[T]he *Pickering* balancing test" considers whether Plaintiff's "interest in commenting upon matters of public concern . . . outweigh[s] the interest of [the District], as an employer, in promoting the efficiency of the public services it performs through its employees." *Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, 537 (6th Cir. 2020) (citation omitted; first two modifications original). Of particular importance in this test is whether the employee is "in a public contact role" or a "public facing role" such that the restricted speech could interfere with the operation and mission of the District. *Id*., at 542. Because Plaintiff's job "quintessentially involve[d] public contact" – as a school bus driver – the District may permissible "take into account the public's perception" of her speech to determine if there is a reason possibility of a disruption to its operations. *Id*. (citation omitted). There need not be an actual disruption; rather, "even a threat of deteriorated 'community trust' grants greater discretion to the [District]." *Id*. (citation omitted). See also *Thompson v. Cent. Valley Sch. Dist. No 365*, 163 F.4th 654, 666 (9th Cir. 2025) (school district's "interest in 'avoiding disruption is magnified when the employee asserting a First

11

Amendment right serves in a . . . public contact role.'") (citation omitted); *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1119 (7th Cir. 2013) ("An employer may have more leeway in restricting the speech of an employee whose position requires contact with the public.") (citing *Rankin v. McPherson,* 483 U.S. 378, 390-91 (1987)); *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 164 (2d Cir. 2001) (*Pickering* balance weighed in favor of defendant "[b]ecause appellants' jobs both require a great deal of public contact[.]").

In sum, Plaintiff spoke pursuant to her official duties as a bus driver, rather than as a private citizen. And as a bus driver she was in a significant public-facing role with daily public contact with school-aged children and parents, thus her interest in passing out religious themed candy bags does not outweigh the District's interests. Therefore, her religious speech is unprotected, and her First Amendment Free Speech claim fails as a matter of law.

Even if her claim did not fail, it must yield to the District's constitutional obligation to avoid a violation of the Establishment Clause. "'The clearest command of the Establishment Clause' is that the government may not 'officially prefer' one religious denomination over another." *Am. Marriage Ministries v. Collins*, No. 3:24-CV-247, __ F.Supp.3d __, 2025 WL 2663652, at *13 (E.D. Tenn. Sept. 17, 2025) (quoting *Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Review. Comm'n*, 605 U.S. 238, 247 (2025)). "[T]he failure of a school to stand apart from religious speech can convey a message that the school endorses rather than merely tolerates that speech." *Bd. of Educ. of Westside Cmty. Schs. v. Mergens By & Through Mergens*, 496 U.S. 226, 264, (1990) (Marshall, J., concurrence). If Supt. Fleenor did not "stand apart" from Plaintiff's activities of handing out religious messages to school-aged children, he and the District risked endorsing her messages.

It is well-established that "the interest of the State in avoiding an Establishment Clause

violation 'may be a compelling' one justifying an abridgment of free speech otherwise protected by the First Amendment[.]" *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (citation omitted). For example, where a teacher challenged a restriction on his Free Exercise rights to discuss his religious beliefs with students, the Ninth Circuit, citing *Lamb's Chapel*, held that "[t]he school district's interest in avoiding an Establishment Clause violation trumps [the teacher's] right to free speech." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994). More importantly, the *Kennedy* Supreme Court recently differentiated between "private prayer" and "leading prayers . . . before [a] captive audience[,]" *Kennedy*, 597 U.S. at 525, which would raise an Establishment Clause concern. Plaintiff handing out religious messages or materials in candy bags is similar to "leading prayers . . . before [a] captive audience" in that she engaged in this activity on a school bus with school-aged children. Assuming *arguendo* that Plaintiff had a Free Speech right per her allegations, the Supt. Fleenor properly restricted her activity to avoid the high probability of an Establishment Clause violation. Thus, her Free Speech claim fails as a matter of law for this alternative reason.

### 2. Supt. Fleenor did not violate Plaintiff's Free Exercise right because of the high likelihood of an Establishment Clause violation.

Plaintiff next claims that her dissemination of religious messages in candy bags to school-aged children on the District's school bus infringed on her right of Free Exercise. It is true that "[a] government act that discriminates against a particular religion triggers the protections of the Free Exercise Clause. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 428 (6th Cir. 2002) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993)). But it is equally true that "[t]he Establishment Clause prohibits public schools, and thus by extension their teachers, from **attempting to indoctrinate students** with any particular religion." *Cahall v. New Richmond Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 1:24-CV-688, 2025 WL 2772519, at *12

13

(S.D. Ohio Sept. 29, 2025) (emphasis added). As the Sixth Circuit has observed, "[a]ny attempt to expand the scope of religious free exercise in the context of public institutions tends to be met by a corresponding objection that the state is threatening to establish a particular religion." *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 117 F.4th 389, 447 (6th Cir. 2024) (Readler, J., dissent), *cert. granted*, 145 S. Ct. 2843, 222 L. Ed. 2d 1129 (2025).

Accepting for purposes of this motion only that Plaintiff's activities were due to her sincerely held religious beliefs and the prohibition burdened her Free Exercise right, numerous cases have held in similar situations that a public-school teacher or other staff may not distribute religious materials to students on school property due to the Establishment Clause's restriction on endorsing a particular religion. See, e.g., *Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1093 (D. Idaho 2010), *aff'd,* 447 F. App'x 776 (9th Cir. 2011) (School administrators "are subject to the requirements of the Establishment Clause which precludes them from promoting religion in the classroom."); *Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093, 1097-98 (E.D. Mo. 2006), *aff'd,* 498 F.3d 878 (8th Cir. 2007) ("The Defendants' actions here adhere to the Establishment Clause by preventing Plaintiffs from using religious texts in publicly funded schools."); *Jabr v. Rapides Par. Sch. Bd. ex rel. Metoyer*, 171 F. Supp. 2d 653, 660 (W.D. La. 2001) (school principal violated Establishment Clause by offering students who came to his office the option of receiving a Bible). There is no dispute that courts "have also held that public school officials have the authority to prevent teachers from giving students and others the impression that the school prefers a particular religion, or religion in general" and consequently "may direct teachers to 'refrain from [the] expression of religious viewpoints in the classroom and **like settings**[.]" *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 475 (2d Cir. 1999) (citations omitted) (emphasis added).

Courts recently have upheld restrictions on teachers' right to display religious materials or displays in a classroom due to the possible Establishment Clause violation. For example, in *Arroyo-Castro*, 2025 WL 3063247, at *18, a teacher challenged the restriction on her display of a crucifix in her classroom on Free Exercise grounds.[6] The court found that "case law requires courts to provide government entities with some leeway when balancing the free exercise right of government employees with the risk of Establishment Clause liability." *Id.*, at *19. See also *id.*, at *21 ("[S]tate officials must be given some 'leeway' and 'breathing space'" when Establishment Clause liability is present.). The *Arroyo-Castro* court distinguished *Kennedy*, 597 U.S. at 537, and held that the "leeway" and "breathing space" permitted by the Establishment Clause insulated the school district from the Free Exercise claim. *Id.*, at *23-25. *See also Silver v. Cheektowaga Cent. Sch. Dist.*, 670 F. App'x 21, 22 (2d Cir. 2016) (citations omitted) (Directive to "remove various religiously-themed postings in [the plaintiff's] classroom "had the secular purpose of, and primary effect of, 'avoidance of the perception of religious endorsement'" and avoiding excessive entanglement in "religious matters.").

And in similar public employer contexts, courts have upheld an employer's restriction on employees sharing their religious beliefs directly with those who they interact with pursuant to their official duties. In *Knight*, 275 F.3d at 160, the plaintiffs challenged the defendant's restriction on sharing their religious beliefs with clients they served through their official duties in part on Free Exercise grounds. *Id.*, at 160. Both plaintiffs "felt compelled to proselytize while working with clients." *Id*. The Second Circuit held that because the plaintiffs were "both government employees who engaged in religious speech while providing state-sponsored services[,]" the

---

[6] Notably, the court also held that "*Pickering-Garcetti* step one" applied to the teacher's Free Exercise claim and therefore the school district properly restricted the display because "the Free Exercise Clause does not compel the District to communicate a religious message." *Id.*, at *17.

15

defendant could permissibly "place a slight burden" on their speech and prohibit them from "shar[ing] their religious beliefs with clients while conducting state business." *Id*., at 165.

Supt. Fleenor's restriction on Plaintiff's distribution of religious materials secreted away in candy bags to school-aged children on school property – i.e., the bus – was a permissible action to avoid an Establishment Clause violation. Case law gives him both "leeway" and "breathing space" to make that call. *Arroyo-Castro*, 2025 WL 3063247, at *19. The restriction prevented Plaintiff from promoting her religious beliefs or sharing her religious messages with a captive audience of impressionable school-aged children. *Id*., at *23 ("school-age children are particularly susceptible to subtle pressure to conform their beliefs to those of their teachers"). The alleged voluntary nature of the students' choice does not warrant a different conclusion. *Jabr*, 171 F. Supp. 2d at 660. It was constitutionally permissible for Supt. Fleenor to prevent the impression that the District preferred Plaintiff's religion if they only allowed her to pass out religious messages. *Marchi*, 173 F.3d at 475. Plaintiff, like other public employees, can be limited in her activities even if she "felt compelled to proselytize" to the students while performing her official duties of driving a bus for the District. *Knight*, 275 F. 3d at 165-66; *Cahall*, 2025 WL 2772519, at *12.

Thus, while the District does not dispute the sincerity of Plaintiff's belief that she needs or is compelled to share her faith with others, her Free Exercise right here must yield in this context to the Establishment Clause's overriding demand that Supt. Fleenor and the District not endorse a particular religion. The Establishment Clause restricts Plaintiff's efforts "to indoctrinate" the school-aged children on the bus with her religious messages placed in candy bags. *Cahall*, 2025 WL 2772519, at *12. Her Free Exercise claim therefore fails to state a claim for relief as a matter

of law, and Supt. Fleenor is therefore entitled to qualified immunity.[7]

      C.   ***Plaintiff's 14th Amendment claims fail as against the District and Supt. Fleenor is entitled to qualified immunity from those claims.***

      1.   <u>**Equal Protection**</u>

As an initial matter, where a plaintiff alleges an Equal Protection claim for the same conduct that allegedly violates the First Amendment, the "primary source of substantive protection" is the First Amendment and thus Plaintiff's "invocation of Fourteenth Amendment rights [for equal protection] is 'unavailing.'" *Bole v. Oldham Cnty. Bd. of Educ.,* No. 3:24-CV-51-RGJ, 2024 WL 4151172, at *8 (W.D. Ky. Sept. 11, 2024) (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008)). Thus, Count VII should be dismissed for the failure to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

Alternatively, Plaintiff fails to demonstrate that a similarly situated bus driver (or

---

[7] Because it is "beyond debate" that in this circumstance Plaintiff did not have a right to distribute religious messages to school-aged children on a bus as part of her official duties and that the District and Supt. Fleenor did not violate any constitutional right in prohibiting her activities to avoid possible Establishment Clause liability, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."), her claimed rights were not clearly established in the context of the public school setting. Thus, Supt. Fleenor is entitled to qualified immunity. *See Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 742 (E.D. Mich. 2006), *aff'd on other grounds sub nom.* 513 F.3d 570 (6th Cir. 2008) (Administrator "had to make a difficult choice in a complicated situation. That she was expected to apply several constitutional tests to determine the correct legal answer would be daunting even in an ideal situation. . . . Balancing obligations under the Establishment Clause and the free speech provisions of the First Amendment in this case placed the defendant squarely upon the "hazy border" that divides acceptable from unreasonable conduct.") (citations omitted); *Draper v. Logan Cnty. Pub. Libr.*, 403 F. Supp. 2d 608, 625 (W.D. Ky. 2005) ("[U]nder the circumstances presented here, the contours of Ms. Draper's rights [of Free Speech and Free Exercise] were not sufficiently clear that a reasonable government official would understand that prohibiting Draper from wearing her necklace while on duty at the library violated her rights."); *Downing v. W. Haven Bd. of Ed.*, 162 F. Supp. 2d 19, 30 (D. Conn. 2001) (Under existing case law, "it was objectively reasonable for the defendants to believe that their conduct would not violate [a teacher's] First Amendment [Free Speech and Free Exercise] rights—particularly in light of their strong, perhaps compelling, interest in avoiding an Establishment Clause violation.").

employee) from another faith was treated differently than her. Plaintiff's Equal Protection claim requires her to allege that the way she was treated was disparate to "similarly situated persons…" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). The "disparate treatment" is the threshold inquiry. *Id*. This requires Plaintiff to show that "similarly situated . . . individuals, of a different [religious] viewpoint, have not been subjected to the same alleged treatment by Defendants." *Id*. (citation omitted).

Plaintiff fails to meet this burden at the pleading stage. She alleges that she is similarly situated to "other [bus] drivers who distributed secular holiday items" but were not terminated. (ECF No. 1, PageID.9, ¶ 88). But the proper comparator, i.e., one who is similarly situated, is other bus drivers (or teachers or other employees) that distributed similar *religious* themed messages to students. *Napolitano, supra*. For example, in *Cahall*, a teacher made certain books about "characters who are LGTBQ+" available in her classroom based "[her] sincerely held moral and religious beliefs" that all children deserved to be respected and loved. 2025 WL 2772519 at *1. In dismissing the teacher's Equal Protection claim, the court held that the teacher failed to identify "other employees engaged in **religiously motivated activities**" that received more favorable treatment. *Id*., at *9 (emphasis added). Specifically, her example of other employees wearing "insignias or symbols of their religious beliefs" did not "constitute[ ] plausible comparator evidence[.]" *Id*., at *9-10. In other words, the teacher failed to show that other employees made religious materials available to their students whereas she was not permitted to. *Id*., at *10.

Like *Cahall*, Plaintiff here fails to plead that another bus driver (or other employee) handed out messages that "pointed to Jesus as Savior" (ECF No. 1, PageID.9, ¶ 89) but was not terminated. The comparison to those that "distributed **secular** holiday items" (ECF No. 1, PageID.9, ¶ 88) is inapplicable to her claim because such an employee is not a proper comparator. *Cahall*, 2025 WL

2772519 at *10; *compare Klayman v. Loeb*, No. 15 CV 1683, 2016 WL 29228, at *4 (N.D. Ohio

Jan. 4, 2016) (Plaintiff "allege[d] no facts whatsoever suggesting that a similarly-situated

individual of a **different religious and political viewpoint** was treated differently than he . . .")

(emphasis added) *with Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) (equal protection claim

survived motion to dismiss because plaintiff alleged "a facially discriminatory distinction between

the Nation of Islam and Al-Islam sects" burdening plaintiff's fundamental right).

Thus, Plaintiff fails to meet her burden and Count VII fails to state a claim for relief.[8] And

since she cannot show a violation of the Equal Protection Clause, Supt. Fleenor is also entitled to

qualified immunity. *Williams*, 81 F.4th at 556; Fed. R. Civ. P. 12(b)(6).

### 2.   Procedural Due Process

In Count VIII, Plaintiff's asserts a "Due Process" claim under § 1983. (ECF No. 1,

PageID.9-10). Plaintiff does not specify if she alleges a substantive due process claim or a

procedural due process claim. However, her allegations indicate she asserts the latter by claiming

that the "Defendants denied Plaintiff a hearing and terminated her without fair process." (*Id.*,

PageID.9, ¶ 93). However, as an at-will employee, no procedural due process was required.

To state a claim for a procedural due process violation under 42 U.S.C. § 1983, a plaintiff

must establish "(1) that [s]he has a life, liberty, or property interest protected by the Due Process

Clause of the Fourteenth Amendment, (2) that [s]he was deprived of this protected interest within

the meaning of the Due Process Clause, and (3) that the state did not afford [her] adequate

procedural rights prior to depriving him of this protected interest." *Mead v. Rockford Pub. Sch.*

---

[8] In addition, the failure of her Free Speech claims dooms her Equal Protection claim as well. See, e.g., *Silver v. Cheektowaga Cent. Sch. Dist.*, 670 F. App'x 21, 22–23 (2d Cir. 2016) ("However, in light of our conclusion that [the teacher's] First Amendment claims fail, we conclude that her equal protection claim, grounded in her alleged right to post or otherwise use the [religiously-themed] materials [in her classroom] referenced in the counseling letter, fails as well.").

*Dist.*, 800 F. Supp. 3d 836, 851 (W.D. Mich. 2025) (citation omitted). That inquiry begins with determining whether under Michigan law Plaintiff had a protected property interest in continued employment. *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972).

Plaintiff has not alleged whether she is an at-will employee or was employed under a contract. The presumption therefore is that she is an at-will employee. *Eplee v. City of Lansing*, 327 Mich. App. 635, 654; 935 N.W.2d 104 (2019) (citation omitted); *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 766 (6th Cir.2010) (citation omitted). Well-established Michigan law holds that, for purposes of a Fourteenth Amendment procedural due process claim, "an at-will employee" lacks a "property right to continued employment" therefore there is no requirement for procedural due process prior to termination. *Manning v. City of Hazel Park*, 202 Mich. App. 685, 694; 509 N.W.2d 874 (1993). Courts in this Circuit have also held that a bus driver for a school district is an at-will employee. See, e.g., *Howart v. Byron Area Sch. Dist.*, No. 04-73087, 2007 WL 1174885, at *11 (E.D. Mich. Apr. 19, 2007). Because Plaintiff does not allege that she was not an "at-will employee" she "lacked a protected property interest in [her] job" that required due process prior to termination. *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 451 (6th Cir. 2022).

Even if Plaintiff is not an at-will employee, she had an adequate remedy with a state court breach of contact action, and a Fourteenth Amendment claim is precluded. See, e.g., *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1273–74 (6th Cir. 1988); *Heath v. Highland Park Sch. Dist.*, 800 F. Supp. 1470, 1474 (E.D. Mich. 1992); *Carroll v. Knox Cnty. Bd. of Educ.*, No. 3:07-CV-345, 2010 WL 2507046, at *11 (E.D. Tenn. June 17, 2010). Any alleged property interest in her employment "is not remediable in federal court in the first instance." *Machisa v. Columbus City Bd. of Educ.*, 563 F. App'x 458, 463 (6th Cir. 2014).

Alternatively, Plaintiff received all the due process required under the District's Policies.

As bus driver, Plaintiff is a "member[ ] of the support staff[.]" Board Policy 4120.[9] The District's

Board of Education delegated the responsibility of terminating "support staff" to Supt. Fleenor.

Board Policy 4010. Supt. Fleenor has the authority to investigate possible misconduct. Board

Policy 4139. Notice is to be given, and the Plaintiff provided with "the opportunity to respond to

the complaint." (*Id*.). Supt. Fleenor provided both notice and the opportunity for Plaintiff to

respond to all three incidents of her disseminating candy bags containing religious messages to

students on her bus. (**Exhibit 1**).

Thus, Count VIII fails to state a claim for relief, the Individual Defendants are entitled to

qualified immunity, and therefore Count VIII must be dismissed. Fed. R. Civ. P. 12(b)(6).

### III.    Plaintiff's Public Policy Violation and Defamation Claims Are Barred By Governmental Immunity.

Plaintiff's state tort law claims for defamation (Count IX) and wrongful termination in

violation of public policy (Count X) are barred by governmental immunity. A governmental

agency is immune from tort liability if it is engaged in the exercise or discharge of a governmental

function. MCL § 691.1407(1). The immunity granted under § 691.1407(1) is expressed in the

broadest possible language, extends to all governmental agencies, and applies to all tort liability,

including for intentional torts, when the governmental agency is engaged in the exercise of a

governmental function. *Nawrocki v. Macomb Cnty Rd. Comm'n*, 463 Mich. 143, 156; 615 N.W.2d

702 (2000). Because defamation is an intentional tort, Plaintiff's claim fails so long as the District

was engaged in a governmental function. It is undisputed that that "the operation of a public school

---

[9] All cited Policies are publicly available at https://go.boarddocs.com/mi/matta/Board.nsf/Public
(click on "Policies" in upper right corner) (last accessed January 29, 2026). *Welsh v. Grandville
Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *6 (W.D. Mich. Jan. 28, 2022), *report and
recommendation adopted*, No. 1:20-CV-1207, 2022 WL 593586 (W.D. Mich. Feb. 28, 2022) ("In
deciding a motion to dismiss, a court may judicially notice documents and other information
available from reliable sources on the Internet, including government websites.").

is a governmental function." *Nalepa v. Plymouth-Canton Comm. Sch. Dist.*, 207 Mich. App. 580, 587; 525 N.W.2d 897 (1994). Likewise, courts have long held that the hiring, supervision, and discipline of a government employee is the exercise of a governmental function. *Galli v. Kirkeby*, 398 Mich. 527, 537; 248 N.W.2d 149 (1976).

It is well established that a wrongful discharge claim in violation of public policy sounds in tort. *See Phillips v. Butterball Farms, Inc.*, 448 Mich. 239, 245-46, 531 N.W.2d 144 (1995). Thus, Plaintiff's wrongful termination in violation of public policy claim is barred by Michigan's governmental immunity statute. *O'Connor v. Redford Twp.*, No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009). In *Thompson v. Wayne County Treasurer*, 2008 WL 1986269, at *3 (Mich. Ct. App. May 8, 2008), the Michigan Court of Appeals recognized that the plaintiff's claim of wrongful discharge in violation of public policy sounded in tort and determined that the claim did not fit within any of the statutory exceptions to governmental immunity. The court held that because "only judicially recognized public policy, not statute, recognizes retaliatory termination in general as an actionable tort, and because that tort thus is not among the statutory exceptions to governmental immunity, retaliatory termination . . . is not actionable against a governmental agency." *Id.*

Moreover, Supt. Fleenor is absolutely immune from these claims under Michigan law. "A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability ... if he or she is acting within the scope of his or her judicial, legislative, or executive authority." § 691.1407(5). As Superintendent of the District, Supt. Fleenor is immune from tort liability. *Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *5 (W.D. Mich. Jan. 28, 2022), *report and recommendation adopted*, No. 1:20-CV-1207, 2022 WL 593586 (W.D. Mich. Feb. 28, 2022) (citing *Nalepa v. Plymouth–Canton*

22

*Comm. Sch. Dist.*, 207 Mich. App. 580, 525 N.W.2d 897 (1994) and *Soper v. Hoben*, 195 F.3d 845, 851 (6th Cir. 1999)). These state law claims therefore should be dismissed with prejudice.

## IV.   Plaintiff's Defamation Claim Fails Because Plaintiff Failed To Identify Any False Comment.

Additionally, the defamation claim fails on its face because Plaintiff has not identified any defamatory comments by Defendants. Rather, Plaintiff claims that Defendants *failed* to speak. (ECF No. 1, PageID.10, at ¶ 97) ("Defendant's silence regarding the reason for termination implied misconduct"); (*Id.* at ¶ 99) ("Defendants fired Plaintiff without public explanation…"). Defamation requires proof of "a false and defamatory statement concerning the plaintiff… to a third party". *Ghanam v. Does*, 303 Mich. App. 522, 544; 845 N.W.2d 128 (2014). Since Plaintiff has not identified any false statement made regarding her to a third person and instead only alleges that Defendants failed to make any comment about her, this claim fails on its face.

## V.   Plaintiff's Elliott Larson Civil Rights Act Claim Fails.

Much like the First Amendment and Title VII, Defendants have been unable to locate any Elliott Larsen cases that protect public school teachers or employees who impose their religious views on students. While ELCRA protects employees from religious discrimination and requires reasonable accommodation of beliefs, it does not allow teachers to coerce students or disrupt the educational mission. As such, this claim also fails.

## CONCLUSION

Contrary to the District's directives, Plaintiff insisted on distributing religious messages contained in candy bags to young, school-aged children while she performed her official duties as a bus driver. Her Title VII claims all fail due to her failure to exhaust. Her First Amendment claims fail because she did not speak as a private citizen on a matter of public concern. The District also permissibly restricted her distribution due to the high potential for liability under the Establishment

Clause. Plaintiff cannot assert an Equal Protection claim because the First Amendment claim is the source of relief, and because she fails to show or even identify a similar comparator. Her Procedural Due Process claim fails because she was an at-will employee, her remedy (if any) is a state court breach of contract action, and she otherwise received due process under the District's policies. The District is entitled to governmental immunity with regard to Plaintiff's state law tort claims. Finally, Supt. Fleenor is absolutely immune from Plaintiff's state law tort claims. Thus, the Court should grant the Defendants' motion and dismiss Plaintiff's complaint with prejudice.

/s/ TRAVIS COMSTOCK\
GIARMARCO, MULLINS & HORTON, PC\
Attorney for Defendants

DATED: February 5, 2026

## CERTIFICATION OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 7,953 words in the brief.

/s/ TRAVIS COMSTOCK\
GIARMARCO, MULLINS & HORTON, PC\
Attorney for Defendants

## CERTIFICATE OF SERVICE

Travis M. Comstock states that on February 5, 2026, he did serve a copy of **Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)** by mail to Sarah M. Robinson, 57951 Western St., Apt. F2B, Mattawan, MI 49071.

/s/ TRAVIS COMSTOCK\
GIARMARCO, MULLINS & HORTON, PC\
Attorney for Defendants\
101 W. Big Beaver Road, 10th Floor\
Troy, MI 48084-5280\
(248) 457-7036\
P72025