UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

SARAH M. ROBINSON,

        Plaintiff,

v

MATTAWAN CONSOLIDATED
SCHOOL DISTRICT and SUPT. RANDALL
FLEENOR,

        Defendants.
_____/

Judge Jane M. Beckering
Magistrate Judge Phillip J. Green
No. 25-1867

| | |
|---|---|
| DAVID PETERS | KENNETH B. CHAPIE (P66148) |
| PACIFIC JUSTICE INSTITUTE | TRAVIS M. COMSTOCK (P72025) |
| PO Box 51787 | KATHERINE E. ROSS (P81172) |
| Livonia, MI 48151 | GIARMARCO, MULLINS & HORTON, P.C. |
| (734) 743-5352 | *Attorneys for Defendants* |
| dpeters@pji.org | 101 W. Big Beaver Road, 10th Floor |
| | Troy, MI 48084-5280 |
| | (248) 457-7048 |
| | kchapie@gmhlaw.com |
| | tcomstock@gmhlaw.com |
| | kross@gmhlaw.com |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

i

INDEX OF AUTHORITIES ................................................................................................ iv

INTRODUCTION    ................................................................................................... 1

STANDARD OF REVIEW.................................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

LEGAL ANALYSIS    ....................................................................................................... 9

I.     Plaintiff's Title VII claims are barred or fail to state claims for relief .................................... 9

       A.     Plaintiff fails to plead that she exhausted her administrative remedies .................... 9

       B.     Plaintiff fails to allege a prima facie case of religious discrimination
              under Title VII and ELCRA and her accommodation posed an undue
              burden on the District............................................................................................... 10

            1.     Plaintiff cannot show a similarly situated comparator and the
                 District has a legitimate non-discriminatory reason for its action ............. 10

            2.     Accommodating Plaintiff is an undue burden because of
                 the probable Establishment Clause liability for the District....................... 12

       C.     Plaintiff's retaliation claims under Title VII and ELCRA fail because
              of the District's Establishment Clause obligation...................................................... 14

II.    Plaintiff's §1983 Claims Fail to State Claims for Relief and the Supt. Fleenor is
     Entitled to Qualified Immunity.............................................................................................. 15

       A.     The District is not vicariously liable and Plaintiff fails to plead with
              Specificity................................................................................................................. 15

       B.     Supt. Fleenor is entitled to qualified immunity from First Amendment
              claims because he did not violate Plaintiff's constitutional rights ......................... 18

            1.     Supt. Fleenor did not violate Plaintiff's Free Exercise right because
                 of the high likelihood of an Establishment Clause violation .................... 18

             2.     Plaintiff's "speech" is not protected because she spoke pursuant
                 to her "official duties" as an employee of the District Supt. Fleenor
                 did not Violate Plaintiff's Free Exercise Right ........................................... 22

       C.     Plaintiff's 14th Amendment claims against the District fail and Supt.
              Fleenor is entitled to qualified immunity from those claims ................................. 29

            1.     Count III - Equal Protection.......................................................................... 29

2.    Procedural Due Process ............................................................................... 31

III.    Plaintiff's State Law Wrongful Termination Claim is Barred By Governmental
Immunity ....................................................................................................................... 33

CONCLUSION    ...................................................................................................................35

## INDEX OF AUTHORITIES

*Am. Marriage Ministries v. Collins*, No. 3:24-CV-247, __ F.Supp.3d __, 2025 WL 2663652, at *13 (E.D. Tenn. Sept. 17, 2025)...................................................................28

*Amini v. Oberlin Coll.,* 259 F.3d 493 (6th Cir. 2001) ..............................................................**2**

*Arroyo-Castro v. Gasper*, No. 3:25-CV-00153 (SFR), __ F. Supp. 3d __, 2025 WL 3063247, at *22-23 (D. Conn. Nov. 3, 2025) ........................................................20

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)...............................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)  ...............................................................................**2**

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, (6th Cir. 2007)  ...................2

*Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017) ..............................................................3

*Bd. of Educ. of Westside Cmty. Schs. v. Mergens By & Through Mergens*, 496 U.S. 226 (1990)....................................................................................................28

*Bd. of Regents v. Roth,* 408 U.S. 564 (1972) .........................................................................32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)............................................................... 2

*Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, (6th Cir. 2020)...........................................................................................................25

*Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021), *aff'd*, 105 F.4th 868 (6th Cir. 2024)............................................................................ 4

*Bole v. Oldham Cnty. Bd. of Educ.,* No. 3:24-CV-51-RGJ, 2024 WL 4151172, at *8 (W.D. Ky. Sept. 11, 2024) ...........................................................................29

*Bradley v. Saranac Cmty. Schs. Bd. of Educ.*, 455 Mich. 285, 565 N.W.2d 650 (1997) .................7

*Brown v. Chicago Bd. of Educ.*, 824 F.3d 713 (7th Cir. 2016)........................................................25

*Carroll v. Knox Cnty. Bd. of Educ.*, No. 3:07-CV-345, 2010 WL 2507046, at *11 (E.D. Tenn. June 17, 2010) ..............................................................................32

*Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Review. Comm'n*, 605 U.S. 238 (2025)....................................................................................................28

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004)...........................................18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) ........................18

iv

*Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110 (7th Cir. 2013) ......................................26

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)..............................30

*Dodson v. Wilkinson*, 304 F. App'x 434 (6th Cir. 2008) ...............................................................29

*Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093, 1097-98 (E.D. Mo. 2006),
*aff'd*, 498 F.3d 878 (8th Cir. 2007) ................................................................................................19

*Downing v. W. Haven Bd. of Ed.*, 162 F. Supp. 2d 19, 30 (D. Conn. 2001)...................................22

*Eplee v. City of Lansing*, 327 Mich. App. 635, 654; 935 N.W.2d 104 (2019) ...............................32

*Galli v. Kirkeby*, 398 Mich. 527, 537; 248 N.W.2d 149 (1976).....................................................34

*Gonzales v. Marysville Sch. Dist./Bd. of Educ.*, No. 08-CV-12095,
2008 WL 2080784, at *1 (E.D. Mich. May 16, 2008 .....................................................................10

*Granderson v. Univ. of Michigan*, 211 F. App'x 398 (6th Cir. 2006) ..............................................9

*Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437 (6th Cir. 2022)........................................32

*Heath v. Highland Park Sch. Dist.*, 800 F. Supp. 1470 (E.D. Mich. 1992) ....................................32

*Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011)...............................................16

*Howart v. Byron Area Sch. Dist.*, No. 04-73087, 2007 WL 1174885,
at *11 (E.D. Mich. Apr. 19, 2007)...................................................................................................32

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014)  ....................................................7,8

*Jabr v. Rapides Par. Sch. Bd. ex rel. Metoyer*, 171 F. Supp. 2d 653 (W.D. La. 2001)..............19,21

*Jackson v. City of Columbus,* 194 F.3d 737 (6th Cir. 1999)..............................................................2

*Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024).......................................................................16

*Klayman v. Loeb*, No. 15 CV 1683, 2016 WL 29228, at *4 (N.D. Ohio Jan. 4, 2016)..................31

*Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156 (2d Cir. 2001) ..........................20,21,26

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) ..............................28

*Machisa v. Columbus City Bd. of Educ.*, 563 F. App'x 458 (6th Cir. 2014).................................32

*Manning v. City of Hazel Park*, 202 Mich. App. 685; 509 N.W.2d 874 (1993)............................32

v

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ..........................20,21

*Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) ......................................................................31

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007)......................................24

*McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023) ..............................................................18,30

*Mead v. Rockford Pub. Sch. Dist.*, 800 F. Supp. 3d 836 (W.D. Mich. 2025)................................32

*Monell. Jones v. Clark Cnty., Kentucky,* 959 F.3d 748 (6th Cir. 2020)
*abrogated in part on other grounds* 596 U.S. 36 (2022) ....................................................1,16,17,18.

*Nalepa v. Plymouth–Canton Comm. Sch. Dist.*, 207 Mich. App. 580,
525 N.W.2d 897 (1994)..............................................................................................................33,34

*Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079 (D. Idaho 2010),
*aff'd,* 447 F. App'x 776 (9th Cir. 2011) ..........................................................................................19

*Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 117 F.4th 389,
(6th Cir. 2024) (Readler, J., dissent), *cert. granted*, 145 S. Ct. 2843,
222 L. Ed. 2d 1129 (2025) ................................................................................................................19

*Nawrocki v. Macomb Cnty Rd. Comm'n*, 463 Mich. 143; 615 N.W.2d 702 (2000) ......................33

*O'Connor v. Redford Twp.,* No. 09-10792, 2009 WL 2488095, at *5
(E.D. Mich. Aug. 13, 2009) .............................................................................................................34

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ..........................................28

*Phillips v. Butterball Farms, Inc.,* 448 Mich. 239; 531 N.W.2d 144 (1995) ................................34

*Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002).......................................................18

*Pucci v. Nineteenth Dist. Court,* 628 F.3d 752 (6th Cir.2010) ......................................................32

*Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268 (6th Cir. 1988) .............................32

*Rankin v. McPherson,* 483 U.S. 378 (1987) ...................................................................................26

*Silver v. Cheektowaga Cent. Sch. Dist.*, 670 F. App'x 21, 22 (2d Cir. 2016) ..........................20,29

*Soper v. Hoben*, 195 F.3d 845 (6th Cir. 1999) ...............................................................................35

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, (2002) .........................................................................2

*Thompson v. Cent. Valley Sch. Dist. No 365*, 163 F.4th 654 (9th Cir. 2025) ...........................26,34

*Trupp v. Bank of Am., N.A.*, No. 3:19-CV-00479-GNS, 2020 WL 1815940,
at *2 (W.D. Ky. Apr. 9, 2020) ...................................................................................................7

*U.S. ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968 (W.D. Mich. 2003) .............................. 2

*Williams*, 81 F.4th at 556; Fed. R. Civ. P. 12(b)(6) .......................................................18,31

## Statutes

28 U.S.C. § 1915(e)(2)(B)(ii) ...................................................................................................10

42 U.S.C. § 1983.........................................................................................15,16,17,18,31

42 U.S.C. § 2000e–5(e)(1)...........................................................................................................9

MCL § 691.1407(5) ....................................................................................................................34

MCL § 691.1407(1) ....................................................................................................................33

Fed. R. Civ. P. 12(b)(6) ................................................................................................29,31,33

**INTRODUCTION**

Plaintiff Sarah Robinson contests her termination as a school bus driver from the Mattawan Consolidated School District ("the District"). She admits that she shared her religious beliefs during her official duties through religious messages in candy bags to school-aged children – a captive audience while riding the bus. Her speech and expression were therefore pursuant to her official duties and raised the significant possibility of Establishment Clause liability.

Trying to avoid the impact of her actions, after being told twice that she could not distribute the candy bags on school property, Plaintiff seeks to deflect her responsibility to her daughter, a minor that did not attend the District. Scapegoating her own daughter fails to avoid dismissal since her daughter would be her agent, and bus video footage blatantly contradicts and utterly discredits Plaintiff's newfound allegations.

The Court should dismiss Plaintiff's Second Amended Complaint because her Title VII claims fail as a matter of law both on the merits and because she did not plead that she exhausted those claims. Defendant Supt. Randy Fleenor (collectively with the District, "the Defendants") is entitled to qualified immunity from Plaintiff's First and Fourteenth Amendment claims because he did not violate any constitutional right that was clearly established. Similarly, Plaintiff's *Monell* claim against the District fails because Plaintiff fails to cite a specific policy or custom upon which her claim is based.

Defendants are entitled to dismissal of the state law claims because they are barred by governmental immunity. As Superintendent, Fleenor is entitled to absolute immunity from any tort claim. Likewise, governmental immunity bars Plaintiff's wrongful termination claim. As such, dismissal of all of Plaintiff's claims against the Defendants is proper as a matter of law.

1

**STANDARD OF REVIEW**

When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint or are central to the claims contained therein. See *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001). Public records and government documents are generally considered "not to be subject to reasonable dispute." *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508–14 (2002). Public records and government documents from reliable sources on the Internet qualify under the above rule. *U.S. ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

With respect to Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557. While a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (internal citations omitted).

Courts must accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, but that presumption does not apply to a claimant's legal conclusions, *Ashcroft*, 556 U.S. at 678. A plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502

2

F.3d at 548 (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted).

At the motion to dismiss stage, when there is video capturing the events in question, the Court relies upon the video over the complaint "to the degree the videos are clear and 'blatantly contradict' or 'utterly discredit' the plaintiff's version of events." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007). See also *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024). If the pleadings contradict verifiable facts central to the claims, then the allegations are implausible. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that the District terminated her employment for her religious speech. (ECF No. 25, PageID.136, ¶ 8; PageID.137 13). Plaintiff worked as a bus driver for less than a year for the District. (*Id.*, PageID.138, ¶ 16). She claims that it is her "right" (and the "right" of her daughter) to "hand out" candy bags on holidays "that contained a short, religious message" to students on her bus (*Id.*, ¶¶ 17-18). She asserts this is permissible because other employees handed out non-religious messages during the holidays. (*Id.*).

She further claims her "significant autonomy" to do this derived from "custom and direct statements" of her supervisor. (*Id.*, PageID.138-39, ¶ 22). She asserts that her bus was her "own nation" thereby granting her the "authority to decorate" for holidays and hand out candy. (*Id.*). But the "authority" she relies on rests on ***rules for students*** riding the bus. (ECF No. 21, PageID.130).[1] She nonetheless exercised this "autonomy" and her "authority" by leaving the religiously themed candy bags at the exit with non-religiously themed bags. (ECF No. 25, PageID.139, ¶ 24).

Plaintiff asserts that one set of these candy bags contained a "holiday themed message

---

[1] Plaintiff's Second Amended Complaint as filed did not include the referenced Exhibits.

contained in a popular children's story" that set forth accurate and historic information about the "J" shape of candy cane in relation to Jesus. (*Id.*, ¶ 24, n. 1). She admits, however, that "similar messages" for other holidays contained "more religious value and less historic value such as 'God Loves You'". (*Id.*).

In reality, these messages were explicitly religious and contained religious prayers.[2] For example, Plaintiff's Halloween message was "A Pumpkin Tale". (Halloween Message, **Exhibit 1**). This sets forth a story about a father bringing his two children pumpkins. The father likens a pumpkin to being a Christian. The daughter then says she "want[s] God's light to shine in my heart." Her father explains that "sin separates us from God", that Jesus was sent "to take away our since by dying on the cross[,]" and if asked Jesus will "come and live in our hearts." The daughter then asks to do that. The message finishes with a suggested prayer. (*Id.*). The message is devoid of any accurate or historical information about a pumpkin, as the title page suggests.

Similarly, the Christmas message is also explicitly religious. It informs the students that the white in the candy cane "symbolize[s] the Virgin Birth and sinless nature of Jesus." (Christmas Message, **Exhibit 2**). The candy cane is hard to "symbolize" that Jesus is "the Solid Rock." And it is firm "to represent the promises of God." A candy cane is in the form of a "J" to symbolize "Jesus our Savior and the Good Shepherd." The red in the candy cane "represent[s] the scourging Jesus received prior to His crucifixion for our healing." Lastly, the red stripe represents the blood Jesus "shed[ ] . . . on the cross for our salvation." (*Id.*).

The final candy bag message was purportedly handed out by Plaintiff's daughter (*Id.* at PageID.140, ¶ 30), and stated that the jellybeans in the bag were "Scripture Candy". (Easter

---

[2] Based on Plaintiff's allegations that discuss the context of the religious messages in the bags, "[t]he court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims." *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021), *aff'd*, 105 F.4th 868 (6th Cir. 2024).

Message, **Exhibit 3**). The "message" is a prayer that starts with the statement that the reader has "a sinful heart" and then correlates the jellybean colors to Jesus' blood, cleansing of sin, heaven, growth from reading the Bible, and finally symbolizing that Jesus is the "King of all" and the "one" the reader choses to obey. (*Id.*). Again, like the aforementioned Halloween and Christmas messages, the Easter message is devoid of any secular or historical information about jellybeans or the Easter holiday in general.

Plaintiff claims that after distributing the Halloween message she was verbally told she could continue if the students' participation was optional and disclosed (ECF No. 25, PageID.139, ¶ 23).  After the handing out the Christmas message, she admits that Supt. Fleenor "reversed" this purported verbal permission, i.e., "guidance", and prohibited her from handing out candy bags to school aged children that contained Christian messages. (*Id.*, ¶ 26). Plaintiff then admits that the transportation director, Scott Hitchcock, informed her of a complaint by the parents of a Jewish student riding her bus. (*Id.*, ¶ 27). She further admits that she was expressly told she had to stop handing out the religiously themed candy bags. (*Id.*).

She admits she was told the reason why she could not pass out the religiously themed candy bags. (*Id.* at PageID.140, ¶ 28). Supt. Fleenor notified her of the conflict and potential liability from a constitutional violation of the Establishment Clause. (*Id.*).

To evade the directive not to distribute explicitly religious messages in candy bags to students as they exited her bus, Plaintiff now claims it was her daughter that continued this prohibited practice. (*Id.*, ¶ 30). She claims her daughter (and an "friend") did this of "their own volition" without any encouragement or suggestion by Plaintiff. (*Id.*). Plaintiff admits this tactic was meant to get around Supt. Fleenor's express directive in an effort "to avoid any hint of coercion" on her part. (*Id.*).

Like the text of the religious messages, the District's videos of Plaintiff's actions blatantly contradict and utterly discredit her allegations. For example, in one video from April 18, 2025, when middle school students are boarding the bus at the school, Plaintiff's daughter can be seen over Plaintiff's left shoulder sitting against the window. (April 18, 2025, Bus Boarding Video, **Exhibit 4**). The religiously themed candy bags are in the seat across from the daughter. Plaintiff, not her daughter, then picks up a box with bracelets and walks to the second row to give one to a student. Plaintiff does suggest that the student did not have to take one. (*Id*.). But she then directly coerces other students to take a religiously themed bracelet at the entry stairs by preventing the students from boarding the bus without making a decision. (*Id*.) A female student notes the connection between the bracelet and Good Friday. Plaintiff then puts the box of bracelets into the first seat (across from her daughter) and redirects another student (who is past the seat) back to the bracelets. (*Id*.). A subsequent male student notes that Plaintiff had "Easter stuff" in the seat. (*Id*.).

During the drop off ride, Plaintiff's daughter remains in the first seat behind Plaintiff. (April 18, 2025 Bus Run Video, **Exhibit 5**). At the first stop, a student exits past the first row where Plaintiff placed the candy bags in the row directly opposite her daughter. (*Id*. at 1:14). The daughter does not get up or otherwise speak to the student regarding the candy bags. She does not hand the student any bag. Plaintiff then invites the student to take one of the bags as she exits the bus. Plaintiff does <u>not</u> inform the student that there are two choices – a religious themed bag or a non-religious bag. She simply says that the student can take a bag. (*Id*.). At the fourth stop, Plaintiff is heard directing her daughter to hand the exiting student a bag. Plaintiff states that she did not want to leave this student out, and her daughter gives the student a separate bag. (*Id*. at 3:30). Her directive to her daughter directly contradicts her allegation that her daughter "on [her] own volition without the PLAINTIFF suggesting it" handed out the message. (ECF No. 25, PageID.140, ¶ 30).

In the third video, Plaintiff is on the bus with other buses beside hers, indicating she is on school property. (April 18, 2025, Video 3, **Exhibit 6**). Elementary students are on the bus. Plaintiff's daughter is again in the first row off Plaintiff's shoulder. Plaintiff stands up, puts a bag on her daughter's lap and then moves a box into the now empty second row off her right shoulder. Plaintiff then directs her daughter to hand out the candy bags from the sack on her lap. (*Id*. at 0:32). Plaintiff next gives an announcement to the whole bus that there are bags of candy available with "an invitation" in them. (*Id*. at 1:20). Plaintiff states that they don't have to take them but does not tell them that non-religious themed bags are available (ECF No. 25, PageID.143, ¶ 49). What she does, however, is coerce them into taking her bags by stating, "but it's just candy." (**Exhibit 6**, at 1:25).

Contrary to Plaintiff's allegation, her act of handing out the religiously themed candy bags did not occur "at the end of the bus drive when the [Plaintiff's] duties were already concluded." (ECF No. 25, PageID.142, ¶ 43.d; *Id*., PageID.142, ¶ 52). As is clearly shown on the videos, her actions occurred on a school bus during the normal course of her duties (thus she did "utilize school resources" (*Id*., PageID.144, ¶ 55)) of picking up and then driving public school elementary and middle school students home. Her actions therefore did not occur "during [her] off-duty time[.]" (*Id*., PageID.144, ¶ 56).

Plaintiff's allegation that she had verbal "permission" that was later "reversed" is also utterly discredited by her discipline letters.[3] Contrary to her allegations, Supt. Fleenor documented that Hitchcock expressly told her following the Halloween message distribution that "this practice

---

[3] In addition to *Blick*, personnel records, like a discipline letter, are public records that can be obtained under Michigan's Freedom of Information Act. *Bradley v. Saranac Cmty. Schs. Bd. of Educ.*, 455 Mich. 285, 294, 565 N.W.2d 650 (1997) (personnel file documents such as "disciplinary actions" are obtainable under FOIA). The Court can permissibly consider the termination letter because the "public records refute a plaintiff's claim[.]" *Trupp v. Bank of Am., N.A.*, No. 3:19-CV-00479-GNS, 2020 WL 1815940, at *2 (W.D. Ky. Apr. 9, 2020) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)).

is unacceptable." (Feb. 4, 2025 email, **Exhibit 7**). At the January 27, 2025, meeting, Plaintiff asserted her belief "that it was permissible" to distribute the religiously themed candy bags "if students were given a choice." (*Id.*) Supt. Fleenor informed her that the District risked liability under the Establishment Clause as it could be viewed as endorsing or promoting Christianity when Plaintiff distributed religiously themed messages during her bus route. Supt. Fleenor also encouraged her to look for "alternative ways" to communicate her beliefs within the District's "established guidelines." (*Id.*).[4]

In Supt. Fleenor's termination letter, following her continued lack of adherence to District' policy at Easter, he again reiterated that Hitchcock did not give permission for her to distribute the Halloween message. (**Exhibit 8**, April 25, 2025, letter). Rather, Hitchcock "issued a directive" prohibiting her from doing so. Contrary to her allegation (ECF No. 25, PageID.142, ¶ 44), Supt. Fleenor's letter expressly states that videos of her actions were reviewed. (**Exhibit 8**). Only after Plaintiff's third flagrant disregard of these express directives was she terminated. (*Id.*). The termination process included separate pre-termination "due process" meetings with both Hitchcock and Supt. Fleenor. (*Id.*).

Plaintiff asserts that her actions did not violate any of the District's Policies. She relies on Policy 3122, which sets forth the District's non-discrimination policy. (ECF No. 21, PageID.126, Exhibit 2). But she ignores Policy 2270 prohibiting any "Board employee" from "promot[ing] religion" on District property. (**Exhibit 9**).[5] This policy further provides that an employee "shall

---

[4] Notably, Plaintiff claims she "asked for multiple accommodations" but fails to attach these requests or explain what her "accommodations" consisted of. (ECF No. 25, PageID.141, ¶ 40).

[5] Policy 2000 and other Board Policies are publicly available at: https://go.boarddocs.com/mi/matta/Board.nsf/Public# (last accessed June 2, 2026). These can be considered given that they are public records. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 466. See also Policy 8600 (defining school buses "shall be maintained by the District for the transportation of resident students" as required by state law.

not be permitted to advance . . . any particular religion . . . ." (*Id*.). Plaintiff also ignores Policy 8800 prohibiting "employees" from using religion "while on duty" in any "celebration." (**Exhibit 10**). Policy 8800 expressly directs staff to "avoid circumstances" where the employee's "expression of religious views could reasonably be construed as an endorsement or approval of the message" by the District. (*Id*.). Moreover, Plaintiff failed to adhere to Policy 8800 when she did not follow protocol to request permission to hand out the religiously themed messages from the "outside organization[s]" from which she obtained the messages. (*Id*.; see also **Exhibits 1-3**).

The District and Supt. Fleenor now move to dismiss Plaintiff's Second Amended Complaint for the failure to state claims for relief and because of Supt. Fleenor's entitlement to qualified immunity.

## LEGAL ANALYSIS

### I.   Plaintiff's Title VII claims are barred or fail to state claims for relief.

Plaintiff asserts four claims under Title VII and/or the Elliott-Larsen Civil Rights Act ("ELCRA") – Counts IV and VII (Title VII and ECLRA Religious Discrimination), Count V (Failure to Accommodate), and Count VI (Retaliation). Plaintiff fails, however, to allege that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") related to these allegations. The failure to file a charge and receive a right to sue letter deprives this Court of subject-matter jurisdiction over these Counts as they relate to Title VII. And even if she overcomes this flaw, she fails to meet her burden at the pleading stage.

### A.   *Plaintiff fails to plead that she exhausted her administrative remedies.*

"A plaintiff generally cannot bring Title VII claims in federal court without first exhausting her administrative remedies. *See* 42 U.S.C. § 2000e–5(e)(1)." *Hayes v. Clariant Plastics & Coatings USA, Inc.,* 144 F.4th 850, 865 (6th Cir. 2025). Exhaustion is achieved when a plaintiff includes her allegations in a charge filed with the EEOC. *Id.* See also *Granderson v. Univ. of*

9

*Michigan*, 211 Fed. App'x 398, 400 (6th Cir. 2006) ("It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ("right-to-sue letter").") (citations omitted).

Plaintiff's Second Amended Complaint is devoid of any allegations related to these two prerequisites. She does not allege that she filed a charge with the EEOC against the District. And she does not allege (or attach) a copy of a right-to-sue letter issued by the EEOC. The failure to meet these two prerequisites warrants dismissal of the Title VII claims. See, e.g., *Gonzales v. Marysville Sch. Dist./Bd. of Educ.*, No. 08-CV-12095, 2008 WL 2080784, at *1 (E.D. Mich. May 16, 2008) (dismissing *pro se* Title VII complaint for failure to exhaust pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)). Thus, as a matter of law Plaintiff's claims in Counts IV – VII must be dismissed pursuant to Rule 12(b)(1).

### B.  *Plaintiff fails to allege a* **prima facie** *case of religious discrimination under Title VII and ELCRA and her accommodation posed an undue burden on the District.*

Even if Plaintiff had exhausted her remedies and pled as such, her allegations fail to state claims for relief. First, she fails to identify a similarly situated comparator. Second, the District faced an undue burden if it accommodated her need to proselytize public-school students via distribution of religiously themed messages with candy while they were on a school bus.

### 1.  <u>Plaintiff cannot show a similarly situated comparator and the District has a legitimate non-discriminatory reason for its action.</u>

With respect to the religious discrimination claim based on disparate treatment (Counts IV and VI (ELCRA)), [6] Plaintiff's allegations must prove that she "(1) is a member of a protected

---

[6] ECLRA claims "are analyzed under the same evidentiary framework used in Title VII cases.'" *Summer v. Detroit Pub. Schs. Cmty. Dist.*, 714 F. Supp. 3d 832, 847 (E.D. Mich. 2024), *aff'd*, No. 24-1729, 2026 WL 637407 (cleaned up; citation omitted).

group, (2) was subject to an adverse employment decision, (3) was qualified for the position, and (4) "that similarly situated non-protected employees were treated more favorably." *Haji v. Columbus City Schs.*, 621 Fed. App'x 309, 315 (6th Cir. 2015) (citations omitted). Plaintiff's claim fails on the fourth element.

She alleges that "other similarly situated employees who also engaged in private, demonstrative religious expression" were not disciplined. (ECF No. 25, PageID.150, ¶ 104). However, she fails to (1) identify these other "employees" or (2) describe what their "demonstrative religious expression" contained or exhibited. The failure to list/name the employees and describe their actions fails to allow any reasonable, plausible inference that they were similarly situated but treated more favorably than Plaintiff. *Summer v. Detroit Pub. Schs. Cmty. Dist.*, 714 F. Supp. 3d 832, 850 (E.D. Mich. 2024), *aff'd*, No. 24-1729, 2026 WL 637407 (6th Cir. Mar. 6, 2026) (In denying plaintiff's ELCRA claim, court held that "Plaintiff's complaint does not list these teachers or describe them in any way" thereby failing to show any similarly situated comparator.). Additionally, Plaintiff's effort to claim that "other employees engaged in similar secular expressions" – i.e., handing out candy at holidays – lacks merit because she admits these employees are not similarly situated since they "hand[ed] out candy containing **nonreligious** messages . . ." (ECF No. 25, PageID.138, ¶ 17) (emphasis added).In addition to failing to meet her *prima facie* burden, the District had a legitimate reason for its actions. *Summer*, 714 F. Supp. 3d at 847 (citation omitted). Plaintiff's acts of distributing explicitly religious messages with candy posed the real risk of an Establishment Clause violation. Parents who objected to their children receiving these messages could, and likely would, view the Plaintiff's actions the District endorsing Christianity (over other religions) and as speaking for the District since the bags were handed out on school property (school bus) by a school employee. Courts have rejected Title VII

11

discrimination claims where the plaintiff's demanded exercise directly collides with the public agency's Establishment Clause obligations. See, e.g., *Mial v. Foxhoven*, 305 F. Supp. 3d 984, 993 (N.D. Iowa 2018); *Spratt v. Kent Cnty.*, 621 F. Supp. 594, 600 (W.D. Mich. 1985), *aff'd*, 810 F.2d 203 (6th Cir. 1986); *Baz v. Walters*, 599 F. Supp. 614, 619–20 (C.D. Ill. 1984), *aff'd*, 782 F.2d 701 (7th Cir. 1986). Thus, since the District had a legitimate, non-discriminatory reason for precluding Plaintiff's actions that were not pretextual (see **Exhibits 7** and **8**), her claim fails to plead a cause of action for religious discrimination under Title VII or ELCRA.

**2.**   **Accommodating Plaintiff is an undue burden because of the probable Establishment Clause liability for the District.**

Turning to the failure to accommodate claim under Title VII and ECLRA (Count V), even if Plaintiff's allegations were sufficient to satisfy her *prima facie* burden – which the District denies they are – the District permissibly refused her accommodation due to the risk of an Establishment Clause violation which overcomes her *prima facie* case. *Id*.

An employer is to provide reasonable accommodation to an employee's religious observance or practice unless said accommodation would result in "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "The reasonableness of an employer's attempt to accommodate is determined on a case-by-case basis." *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002) (citation omitted). Undue hardship is shown when "a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). This requires showing "substantial increased costs" in relation to the business. *Id*. at 471. Liability from an Establishment Clause violation clearly meets this showing.

Here, the context is a public-school employee admittedly handing out explicitly religious themed messages with candy on a school bus to school aged children. Courts have held that the risk of liability under the Establishment Clause demonstrates an undue burden. The Ninth Circuit,

12

for example, in a case involving a public employee's display of a Bible and religious message in his cubicle when meeting with clients, held that "allowing [the plaintiff] to discuss religion with the Department's clients would create a danger of violations of the Establishment Clause of the First Amendment. This constitutes an undue hardship [under Title VII]." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). Similarly, the Eighth Circuit recently relied on *Berry* in a case involving an inmate posting religious "commentary" online. *Naylor v. Cnty. of Muscatine, Iowa*, 151 F.4th 973 (8th Cir. 2025). That Court noted that "for state entities like a county jail, certain public-facing religious displays by employees may inflect the employer's public image with religion in a way that would pose establishment-clause problems." *Id.*, at 977, n. 7 (citing *Berry*).

The conflict between an employee's religious messages and the District's duties under the Establishment Clause need not be a present liability. "Even a 'danger' of violating the law suffices to show undue hardship." *Trueblood v. Valley Cities Counseling & Consultation*, 748 F. Supp. 3d 988, 1006 (W.D. Wash. 2024) (citing *Berry*). "Undue hardship can exist if the proposed accommodation would 'either cause or increase . . . the risk of legal liability for the employer.'" *French v. Albany Med. Ctr.*, No. 1:22-CV-252 (MAD/DJS), 2024 WL 2958461, at *10 (N.D.N.Y. June 12, 2024). "[A]n accommodation that would require an employer to violate the law imposes an undue hardship." *Russo v. Patchogue-Medford Sch. Dist.,* 129 F.4th 182, 186 (2d Cir. 2025) (religious accommodation would make district violate state law). Plaintiff admits that the District faced this risk during her tenure because she had notice of a parent's complaint about her actions. (ECFR No. 25, PageID.139, ¶ 27). Thus, because the District faced the "danger" of violating and "the risk of legal liability" under the Establishment Clause, Plaintiff's accommodation – to hand out religiously themed messages with candy – was an undue burden, and her failure to

13

accommodate claims under Title VII and ELCRA fail.

### C. Plaintiff's retaliation claims under Title VII and ELCRA fail because of the District's Establishment Clause obligation.

Plaintiff "must demonstrate four elements to establish a prima facie case of retaliation under both Title VII and ELCRA: (1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) 'the defendant took an action that was "materially adverse" to the plaintiff,' and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021) (citations omitted). Reliance on circumstantial evidence of retaliation provides the District the opportunity to rebut the *prima facie* case with a "legitimate, nondiscriminatory reason" for the challenged action. *Id*. (citation omitted). Plaintiff can then attempt to argue that the legitimate reason is pretextual for unlawful retaliation. *Id*. (citation omitted).

Plaintiff claims that the District "target[ed]" her "because she identified as a Christian and expressed Christian beliefs[.]" (ECF No. 25, PageID.152, ¶ 122). The District allegedly did this only to her but allowed other Christian employees to "engage[ ] in private, demonstrative religious expression" in the workplace. (*Id*.). As a threshold issue, Plaintiff fails to identify these alleged similarly situated employees, thereby dooming her claim.

In addition, the District's legitimate reason for terminating her overcomes any *prima facie* case she may establish and was not pretextual. The District directed Plaintiff to "curtail" (*Id*., PageID.153, ¶ 124) her actions of distributing religiously themed candy bags because it violated its Policy and the Establishment Clause. Policy 2270  prohibited her conduct. (**Exhibit 9**). Not only for her, but for **all employees**. Courts have held (in similar discrimination or failure to accommodate contexts) that when faced with an Establishment Clause violation, public employers do not violate Title VII's retaliation clause when applying generally applicable policies prohibiting

14

religious activity during the course of a public employee's duties. See, e.g., *Mial*, 305 F. Supp. at 993; *Spratt*, 621 F. Supp. at 600 (defendant warned plaintiff of violation of policy and when actions breached the policy and thus discharge did not violate Title VII); *Baz*, 599 F. Supp. at 619–20 (employee's failure to stop proselytizing, contrary to policy, justified termination). Just as in those cases, the District's legitimate reason for discharging Plaintiff for violating its Policy against religious activities during her official duties requires the dismissal of Count VI.

II.    **Plaintiff's § 1983 Claims Fail to State Claims for Relief and the Supt. Fleenor is Entitled to Qualified Immunity.**

Plaintiff alleges various violations of her rights under the First and Fourteenth Amendments in Counts I, II, III and VIII. First, Plaintiff fails to state against whom these claims are asserted and therefore she fails to state a claim for relief under those Counts. Second, to the extent she asserts these claims against Supt. Fleenor, he is entitled to qualified immunity as to the First Amendment claims. Third, even if there is a constitutional violation of free speech or free exercise that is clearly established, the District's potential Establishment Clause liability provides its administrators with the leeway and breathing space to restrict or prohibit Plaintiff's speech in this instance. Finally, Supt. Fleenor is entitled to qualified immunity from Plaintiff's Equal Protection or Procedural Due Process claims. Thus, Counts I, II, III, and VIII must be dismissed as a matter of law.

A.    *The District is not vicariously liable and Plaintiff fails to plead with specificity.*

Plaintiff alleges in Count I that the District is responsible for violating her First Amendment rights. But "[b]ecause vicarious liability is inapplicable to § 1983 claims, a plaintiff must plead that each government-official defendant, through the **official's own individual actions**, has violated the Constitution." *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 Fed. App'x 348, 352 (6th Cir. 2014) (emphasis added). See also *Ashcroft*, 556 U.S. at 676 (A § 1983 claim "must plead

15

that each Government-official defendant, through the **official's own individual actions**, has violated the Constitution.") (emphasis added).

That is, Plaintiff's Complaint "must allege, with particularity, facts that demonstrate what ***each* defendant** did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted; italics original; bold added). *See also Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (A plaintiff "must also show that all Defendants acted on **his or her own** to violate [plaintiff's] First Amendment rights.") (citing *Heyne*; emphasis added). Here, Plaintiff's allegations in Counts II and VIII fail to state with specificity whom she is asserting the claim against. (ECF No. 25, PageID.149; PageID. 155). Instead, Plaintiff uses only the generic term of "Defendants". (PageID.149, ¶¶ 97-98; PageID.155, ¶ 142). By using generic versus defendant specific factual allegations, the Plaintiff fails to adequately plead claims under § 1983. And this fails to the meet the basic pleadings standards under *Bell Atl. Corp.,* 550 U.S. 544 and *Ashcroft,* 556 U.S. 662. "A complaint which 'makes only categorical references to "Defendants" ' fails to 'allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.'" *Summer*, 714 F. Supp. 3d at 848 (citations omitted). Thus, Counts III and VII fail to plausibly allege a cause of action and must be dismissed.

Moreover, Plaintiff attempts to improperly impose vicarious liability on the District.  It is well established that a governmental entity cannot be held vicariously liable for the acts of their agents under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Rather, the plaintiff must show that the District itself is the wrong doer. *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 403 (6th Cir. 2010). To determine whether a school district can be held liable, courts look to (1) whether

16

the plaintiff has asserted that he has been deprived of a constitutional right; and (2) whether the municipal educational entity is responsible for that violation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). With regard to the second element, the plaintiff must point to an official policy, custom, or practice of that governmental entity as the source of the constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). A "custom" must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

To the extent that Plaintiff's allegations use the word "policy" twice (ECF No. 25, PageID.145, ¶ 64; PageID.146, ¶ 65), she fails to plausibly allege a custom/policy claim under *Monell*.[7] The Sixth Circuit has instructed that the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [their] particular injury was incurred due to execution of that policy." *Vereecke,* 609 F.3d at 403. The custom, policy or practice attributable to the governmental entity must be the moving force behind the constitutional violation. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). Conclusory allegations are not enough. "The pleadings must set forth the specific policy or custom allegedly adopted by the government." *Sistrunk v. City of Hillview*, 545 F.Supp.3d 493, 498 (W.D.K.Y. 2021). Further, "[a]n allegation, stated in a conclusory manner, that a governmental entity had a policy which caused an injury is insufficient where a specific policy or custom is not identified." *Jane v. Patterson*, No. 1:16 CV 2195, 2017 WL 1345242 at *6 (N.D. Ohio, Apr. 12, 2017).

Because Count I is devoid of the necessary allegations to state a claim for relief it should be dismissed as matter of law. *Edwards v. Grand Rapids Cmty. Coll.*, No. 1:09-CV-1067, 2010 WL 5860415, at *4 (W.D. Mich. Dec. 21, 2010), *report and recommendation adopted,* No. 1:09-

---

[7] In addition, Count I reads more like a Title VII and ELCRA claim – the District's "decision. . . constitutes disparate treatment under Title VII and ELCRA" (ECF No. 25, PageID.146, ¶ 65) and "MATTAWAN directly discriminated against PLAINTIFF on the basis of her religion pursuant to 42 USC § 2000e-2(a)" (*Id*., ¶ 66).

CV-1067, 2011 WL 710459 (W.D. Mich. Feb. 22, 2011) (School entity "may not be held responsible in a civil rights action brought pursuant to 42 U.S.C. § 1983 on a *respondeat superior* theory, but that the requirements of *Monell* for municipal liability must be satisfied.") (citing *Chonich v. Wayne County Cmty. College,* 874 F.2d 359, 366–67 (6th Cir.1989)).

### B. Supt. Fleenor is entitled to qualified immunity from First Amendment claims because he did not violate Plaintiff's constitutional rights.

If the Court does not dismiss Counts I and II but instead views the allegations as alleging violations by Supt. Fleenor in his individual capacity, he is entitled to qualified immunity. Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (citation omitted). The two-step analysis for considering whether qualified immunity applies is well-known. "Overcoming the invocation of qualified immunity requires [Plaintiff] to turn a double play of sorts. [She] must show both that (1) school officials violated [her] constitutional rights, and (2) that 'the right was "clearly established" at the time of the challenged conduct.'" *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023) (citation omitted). Failure on either prong means Supt. Fleenor is entitled to qualified immunity. *Id.*

### 1. <u>Supt. Fleenor did not violate Plaintiff's Free Exercise right because of the high likelihood of an Establishment Clause violation.</u>

Plaintiff first claims in Count I that her dissemination of religious messages in candy bags to school-aged children on the District's school bus infringed on her right of Free Exercise. It is true that "[a] government act that discriminates against a particular religion triggers the protections of the Free Exercise Clause. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 428 (6th Cir. 2002) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993)). But

18

it is equally true that "[t]he Establishment Clause prohibits public schools, and thus by extension their teachers, from **attempting to indoctrinate students** with any particular religion." *Cahall v. New Richmond Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 1:24-CV-688, 2025 WL 2772519, at *12 (S.D. Ohio Sept. 29, 2025) (emphasis added). As the Sixth Circuit has observed, "[a]ny attempt to expand the scope of religious free exercise in the context of public institutions tends to be met by a corresponding objection that the state is threatening to establish a particular religion." *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 117 F.4th 389, 447 (6th Cir. 2024) (Readler, J., dissent), *cert. granted*, 145 S. Ct. 2843, 222 L. Ed. 2d 1129 (2025).

Accepting for purposes of this motion only that Plaintiff's activities were due to her sincerely held religious beliefs and the prohibition burdened her Free Exercise right, numerous cases have held in similar situations that a public-school teacher or other staff may not distribute religious materials to students on school property due to the Establishment Clause's restriction on endorsing a particular religion. See, e.g., *Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1093 (D. Idaho 2010), *aff'd,* 447 Fed. App'x 776 (9th Cir. 2011) (School administrators "are subject to the requirements of the Establishment Clause which precludes them from promoting religion in the classroom."); *Doe v. S. Iron R-1 Sch. Dist.*, 453 F. Supp. 2d 1093, 1097-98 (E.D. Mo. 2006), *aff'd,* 498 F.3d 878 (8th Cir. 2007) ("The Defendants' actions here adhere to the Establishment Clause by preventing Plaintiffs from using religious texts in publicly funded schools."); *Jabr v. Rapides Par. Sch. Bd. ex rel. Metoyer*, 171 F. Supp. 2d 653, 660 (W.D. La. 2001) (school principal violated Establishment Clause by offering students who came to his office the option of receiving a Bible). There is no dispute that courts "have also held that public school officials have the authority to prevent teachers from giving students and others the impression that the school prefers a particular religion, or religion in general" and, consequently, "may direct

19

teachers to 'refrain from [the] expression of religious viewpoints in the classroom and **like settings**[.]" *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 475 (2nd Cir. 1999) (citations omitted) (emphasis added).

Courts recently have upheld restrictions on teachers' right to display religious materials or displays in a classroom due to the possible Establishment Clause violation. For example, in *Arroyo-Castro v. Gasper*, 812 F. Supp. 3d 203, 227 (D. Conn. 2025), a teacher challenged the restriction on her display of a crucifix in her classroom on Free Exercise grounds.[8] The court found that case law "requires courts to provide government entities with some leeway when balancing the free exercise right of government employees with the risk of Establishment Clause liability." *Id*., at 228. See also *id*., at 230 ("[S]tate officials must be given some 'leeway' and 'breathing space'" when Establishment Clause liability is present.).

The *Arroyo-Castro* court distinguished *Kennedy*, 597 U.S. at 537, and held that the "leeway" and "breathing space" permitted by the Establishment Clause insulated the school district from the Free Exercise claim. *Id*., at 232-25. *See also Silver v. Cheektowaga Cent. Sch. Dist.*, 670 Fed. App'x 21, 22 (2d Cir. 2016) (citations omitted) (Directive to "remove various religiously-themed postings in [the plaintiff's] classroom "had the secular purpose of, and primary effect of, 'avoidance of the perception of religious endorsement'" and avoiding excessive entanglement in "religious matters.").

And in similar public employer contexts, courts have upheld an employer's restriction on employees sharing their religious beliefs directly with those who they interact with pursuant to their official duties. In *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156 (2nd Cir. 2001),

---

[8] Notably, the court also held that "*Pickering-Garcetti* step one" applied to the teacher's Free Exercise claim and therefore the school district properly restricted the display because "the Free Exercise Clause does not compel the District to communicate a religious message." *Id*., at *17.

the plaintiffs challenged the defendant's restriction on sharing their religious beliefs with clients they served through their official duties in part on Free Exercise grounds. *Id.*, at 160. Both plaintiffs "felt compelled to proselytize while working with clients." *Id*. The Second Circuit held that because the plaintiffs were "both government employees who engaged in religious speech while providing state-sponsored services[,]" the defendant could permissibly "place a slight burden" on their speech and prohibit them from "shar[ing] their religious beliefs with clients while conducting state business." *Id.*, at 165.

Supt. Fleenor's restriction on Plaintiff's distribution of religious materials secreted away in candy bags to school-aged children on school property – i.e., the bus – was a permissible action to avoid an Establishment Clause violation. Case law gives him both "leeway" and "breathing space" to make that call. *Arroyo-Castro*, 812 F. Supp. 3d at 231. The restriction prevented Plaintiff from promoting her religious beliefs or sharing her religious messages with a captive audience of impressionable school-aged children. *Id.*, at 232 ("school-age children are particularly susceptible to subtle pressure to conform their beliefs to those of their teachers"). The alleged voluntary nature of the students' choice does not warrant a different conclusion. *Jabr*, 171 F. Supp. 2d at 660. It was constitutionally permissible for Supt. Fleenor to prevent the impression that the District preferred Plaintiff's religion if they only allowed her to pass out religious messages. *Marchi*, 173 F.3d at 475. Plaintiff, like other public employees, can be limited in her activities even if she "felt compelled to proselytize" to the students while performing her official duties of driving a bus for the District. *Knight*, 275 F. 3d at 165-66; *Cahall*, 2025 WL 2772519, at *12.

Thus, while the District does not dispute the sincerity of Plaintiff's belief that she needs or is compelled to share her faith with others, her Free Exercise right must yield in this context to the Establishment Clause's overriding demand that Supt. Fleenor and the District not endorse a

21

particular religion. The Establishment Clause restricts Plaintiff's efforts "to indoctrinate" the school-aged children on the bus with her religious messages placed in candy bags. *Cahall*, 2025 WL 2772519, at *12. Her Free Exercise claim therefore fails to state a claim for relief as a matter of law, and Supt. Fleenor is therefore entitled to qualified immunity.[9]

### 2.    Plaintiff's "speech" is not protected because she spoke pursuant to her "official duties" as an employee of the District.

Plaintiff next alleges in Count II that she was discriminated "on the basis of her religion" contrary to Title VII, ELCRA and being a Christian.[10] (ECF No. 25, PageID.148, ¶ 83). She contends that the District cannot restrict her speech since it is allegedly "viewpoint discrimination." (Id*., ¶ 84). Plaintiff claims she had to choose between her job and her faith. (Id., ¶ 88). Plaintiff astonishingly asserts that when "the bus had stopped" she "was a private citizen" for purposes of her speech. (*Id*., ¶ 91). In essence, Plaintiff asserts a claim for First Amendment

---

[9] Because it is "beyond debate" that in this circumstance Plaintiff did not have a right to distribute religious messages to school-aged children on a bus as part of her official duties and that Supt. Fleenor did not violate any constitutional right in prohibiting her activities to avoid possible Establishment Clause liability, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."), her claimed rights were not clearly established in the context of the public school setting. Thus, Supt. Fleenor is entitled to qualified immunity. *See Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 742 (E.D. Mich. 2006), *aff'd on other grounds sub nom.* 513 F.3d 570 (6th Cir. 2008) (Administrator "had to make a difficult choice in a complicated situation. That she was expected to apply several constitutional tests to determine the correct legal answer would be daunting even in an ideal situation. . . . Balancing obligations under the Establishment Clause and the free speech provisions of the First Amendment in this case placed the defendant squarely upon the "hazy border" that divides acceptable from unreasonable conduct.") (citations omitted); *Draper v. Logan Cnty. Pub. Libr.*, 403 F. Supp. 2d 608, 625 (W.D. Ky. 2005) ("[U]nder the circumstances presented here, the contours of Ms. Draper's rights [of Free Speech and Free Exercise] were not sufficiently clear that a reasonable government official would understand that prohibiting Draper from wearing her necklace while on duty at the library violated her rights."); *Downing v. W. Haven Bd. of Ed.*, 162 F. Supp. 2d 19, 30 (D. Conn. 2001) (Under existing case law, "it was objectively reasonable for the defendants to believe that their conduct would not violate [a teacher's] First Amendment [Free Speech and Free Exercise] rights—particularly in light of their strong, perhaps compelling, interest in avoiding an Establishment Clause violation.").

[10] Notably, Title VII of the Civil Rights Act of 1964 does not protect public school teachers who impose their religious views on students. Title VII also does not allow teachers to coerce students or disrupt the educational mission. See https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_69360387125341610748888622 (Section 12-III) (last accessed May 19, 2026).

retaliation. However, as a public employee whose speech occurred during her official duties, the District properly restricted her speech.

While it is true that Plaintiff does not lose her First Amendment rights as a public employee, that does not mean that her "speech rights" as a bus driver "are so boundless that [she] may deliver any message to anyone anytime [she] wish[es]." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.*

"To account for the complexity associated with the interplay between free speech rights and government employment," courts first inquire about "the nature of the speech at issue" and then "engage in 'a delicate balancing of the competing interests surrounding the speech and its consequences.'" *Id.*, at 527-28 (citation omitted). Plaintiff's retaliation claim requires her to prove:

> (1) the plaintiff engaged in protected conduct, *i.e.*, constitutionally protected speech; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022) (citation omitted; cleaned up). *See also Garcetti*, 547 U.S. at 527.

Plaintiff's claim fails on the first element. For the first element, courts apply a second three-prong test. First, Plaintiff must speak as a private citizen and not "pursuant to [her] official duties." *Myers*, 41 F.4th at 760 (citation omitted). Second, the claimed speech must be on a matter of public

concern. *Id*. (citation omitted). And third, the employee's interest must outweigh the District's interest as an employer in its interest of efficiently performing its operations. *Id*. (citation omitted). These inquiries are all questions of law. *Id*.

Plaintiff did not speak as a private citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (quoting *Garcetti,* 547 U.S. at 421) (brackets original). Determining if the claimed speech is private involves examining "both its content and context—including to whom the statement was made[.]" *Id*. (citing *Garcetti*). That is, courts examine "the speech's impetus; its setting; its audience; and its general subject matter" – the "who, where, what, when, why, and how" of the speech. *Mayhew v. Town of Smyrna, Tennessee,* 856 F.3d 456, 464 (6th Cir. 2017) (citations omitted).

Plaintiff admits that the context of her speech, i.e., the setting and its audience, was in the confines of a school bus and directed at a captive audience of schoolchildren. And her official position/duty as a bus driver is the only reason that she had access to the students on the bus. The Supreme Court in *Kennedy* distinguished between religious speech made in private (after football game with no players around) and a "captive audience" that "involve[ed] students." *Kennedy*, 597 U.S. at 525. Unlike in *Kennedy*, Plaintiff's speech occurred to a "captive audience" on a school bus and therefore was not private religious speech.

Other courts have held that First Amendment speech that may be otherwise protected is not when it is made "to captive audiences against the instructions of elected officials." *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 480 (7th Cir. 2007). *See also Edwards v. Aguillard,* 482 U.S. 578, 584 (1987) ("Families entrust public schools with the education of their children,

24

but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family."); *Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016) ("[A] teacher's in–classroom speech is not the speech of a 'citizen' for First Amendment purposes.") (citation omitted); *Arroyo-Castro*, 812 F. Supp. 3d at 232-33 (Supreme court cases point out "several particular concerns about religious practices in public elementary and secondary schools. First, children are compelled by law to be at school and thus [are] '**captive audiences**.' . . . Second, **school-age children are particularly susceptible to subtle pressure** to conform their beliefs to those of their teachers or peers.") (citations omitted; emphases added).

Plaintiff's official duties included interacting with students who were a "captive audience" entering or exiting her bus and could feel "subtle pressure" from a person they trusted into taking candy bags that included religious messages. Plaintiff spoke pursuant to her official duties, and her claimed speech is not protected by the First Amendment. Thus, she fails to state a claim for relief. *Garcetti*, 547 U.S. at 418 (If public employee does not speak "as a citizen on a matter of public concern" then "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.").

Plaintiff's claim also fails the third prong, known as the *Pickering* balancing test. "[T]he *Pickering* balancing test" considers whether Plaintiff's "interest in commenting upon matters of public concern . . . outweigh[s] the interest of [the District], as an employer, in promoting the efficiency of the public services it performs through its employees." *Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, 537 (6th Cir. 2020) (citation omitted; first two modifications original). Of particular importance in this test is whether the employee is "in a public contact role" or a "public facing role" such that the restricted speech could interfere with

25

the operation and mission of the District. *Id.*, at 542. Because Plaintiff's job "quintessentially involve[d] public contact" – as a school bus driver – the District may permissibly "take into account the public's perception" of her speech to determine if there is a reasonable possibility of a disruption to its operations. *Id.* (citation omitted). There need not be an actual disruption; rather, "even a threat of deteriorated 'community trust' grants greater discretion to the [District]." *Id.* (citation omitted). See also *Thompson v. Cent. Valley Sch. Dist. No 365*, 163 F.4th 654, 666 (9th Cir. 2025) (school district's "interest in 'avoiding disruption is magnified when the employee asserting a First Amendment right serves in a . . . public contact role.'") (citation omitted); *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1119 (7th Cir. 2013) ("An employer may have more leeway in restricting the speech of an employee whose position requires contact with the public.") (citing *Rankin v. McPherson,* 483 U.S. 378, 390-91 (1987)); *Knight*, 275 F.3d at 164 (*Pickering* balance weighed in favor of defendant "[b]ecause appellants' jobs both require a great deal of public contact[.]").

In sum, Plaintiff spoke pursuant to her official duties as a bus driver, rather than as a private citizen. And as a bus driver she was in a significant public-facing role with daily public contact with school-aged children and parents, thus her interest in passing out religious themed candy bags does not outweigh the District's interests. Therefore, her religious speech is unprotected, and her First Amendment Free Speech claim fails as a matter of law.

Plaintiff's new allegation that her daughter voluntarily continued the prohibited practice of handing out religiously themed candy bags at Easter also fails. (ECF No. 25, PageID.138, ¶ 18; PageID.140, ¶ 30), First, the videos blatantly contradict Plaintiff's allegations that her daughter handed out the religiously themed candy such that the allegations asserted are implausible. *Bailey*, 860 F.3d at 387. Notably, the first video clearly shows Plaintiff handing out the religiously themed

26

bracelets to students as they boarded the bus. (**Exhibit 4**). Likewise, the second video shows Plaintiff directing the students to the box of candy without advising that there were two choices. (**Exhibit 5**). Finally, the third video shows Plaintiff placing a bag of candy in her daughter's lap and instructing her to hand the candy out. (**Exhibit 6**). These videos clearly contradict and discredit Plaintiff's allegations and version of events. As such, the videos, not the allegations in the Second Amended Complaint, should be relied upon by this Court. *Bell*, 37 F.4th at 364. These videos demonstrate that Plaintiff disobeyed Supt. Fleenor's directive and continued handing out religiously themed messages to students.

Further, the Michigan Court of Appeals has held that a parent can be liable in a civil action if their negligence allows their child to injure someone. *Muma v. Brown*, 1 Mich. App. 373, 377, 136 N.W.2d 696 (1965), *aff'd*, 378 Mich. 637, 148 N.W.2d 760 (1967). Applying this general principle here, the injury at issue is the District's high likelihood of liability for an Establishment Clause violation.

Notably, Plaintiff does not allege that her daughter bought the expressly religious messages. It is likely undisputable that Plaintiff purchased the messages. (See Exhibit 1-3 (showing that the message was produced by "Good News Tracts")). Thus, it is implausible that her daughter purchased the messages on her own and decided independently to hand them out to District students riding the bus.[11] More importantly, even though Plaintiff alleges that her daughter independently decided to hand out the religious messages "to avoid any hint of coercion" (ECF

---

[11] The daughter was not enrolled in the District in 2024-25. (Exhibit 11 (redacted)). The District was aware that she rode Plaintiff's bus but did not give her any permission to hand out religious tracts. Moreover, a school can permissibly restrict the Plaintiff (via the daughter's alleged voluntary actions facilitated by Plaintiff's purchases and via the Plaintiff's role as a public employee) from distributing religiously themed message on school property (i.e., the bus). See, e.g., *Curry ex rel Curry v. Hensiner*, 513 F.3d 570, 579 (6th Cir. 2008) (denying student's free exercise claim from handing out religious message involving religious correlation between a candy cane and Jesus because the "expression . . . proselytizes a particular view" and "the admitted purpose . . . was to promote Jesus to other students.").

No. 25, PageID.140, ¶ 30), it is clear that Plaintiff concocted this strategy in order to appear that she was not violating Supt. Fleenor's directive. Thus, she is liable since the injury had a high probability of exposing the District to liability under the Establishment Clause. See Section II, 1., *supra*.

Even if her claim did not fail for the above reasons, her religious expression on school property during her official duties must yield to the District's constitutional obligation to avoid a violation of the Establishment Clause. "'The clearest command of the Establishment Clause' is that the government may not 'officially prefer' one religious denomination over another." *Am. Marriage Ministries v. Collins*, No. 3:24-CV-247, 857F.Supp.3d 777, 800-01 (E.D. Tenn. Sept. 17, 2025) (quoting *Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Review. Comm'n*, 605 U.S. 238, 247 (2025)). "[T]he failure of a school to stand apart from religious speech can convey a message that the school endorses rather than merely tolerates that speech." *Bd. of Educ. of Westside Cmty. Schs. v. Mergens By & Through Mergens*, 496 U.S. 226, 264, (1990) (Marshall, J., concurrence). If Supt. Fleenor did not "stand apart" from Plaintiff's activities of handing out religious messages to school-aged children, he and the District risked endorsing her messages.

It is well-established that "the interest of the State in avoiding an Establishment Clause violation 'may be a compelling' one justifying an abridgment of free speech otherwise protected by the First Amendment[.]" *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (citation omitted). For example, where a teacher challenged a restriction on his Free Exercise rights to discuss his religious beliefs with students, the Ninth Circuit, citing *Lamb's Chapel*, held that "[t]he school district's interest in avoiding an Establishment Clause violation trumps [the teacher's] right to free speech." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994). More importantly, the *Kennedy* Supreme Court recently differentiated

28

between "private prayer" and "leading prayers . . . before [a] captive audience[,]" *Kennedy*, 597 U.S. at 525, which would raise an Establishment Clause concern. Plaintiff handing out religious messages or materials in candy bags is similar to "leading prayers . . . before [a] captive audience" in that she engaged in this activity on a school bus with school-aged children. Assuming *arguendo* that Plaintiff had a Free Speech right per her allegations, Supt. Fleenor properly restricted her activity to avoid the high probability of an Establishment Clause violation. Thus, her Free Speech claim fails as a matter of law for this alternative reason.

### C. Plaintiff's 14th Amendment claims against the District fail and Supt. Fleenor is entitled to qualified immunity from those claims.

#### 1.  <u>Count III - Equal Protection</u>

As an initial matter, where a plaintiff alleges an Equal Protection claim for the same conduct that allegedly violates the First Amendment, the "primary source of substantive protection" is the First Amendment and thus Plaintiff's "invocation of Fourteenth Amendment rights [for equal protection] is 'unavailing.'" *Bole v. Oldham Cnty. Bd. of Educ.,* No. 3:24-CV-51-RGJ, 2024 WL 4151172, at *8 (W.D. Ky. Sept. 11, 2024) (quoting *Dodson v. Wilkinson*, 304 Fed. App'x 434, 438 (6th Cir. 2008)). In addition, the failure of her Free Speech claim dooms her Equal Protection claim as well. See, e.g., *Silver v. Cheektowaga Cent. Sch. Dist.*, 670 Fed. App'x 21, 22–23 (2nd Cir. 2016) ("However, in light of our conclusion that [the teacher's] First Amendment claims fail, we conclude that her equal protection claim, grounded in her alleged right to post or otherwise use the [religiously-themed] materials [in her classroom] referenced in the counseling letter, fails as well."). Thus, Count III should be dismissed for the failure to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

Alternatively, Plaintiff fails to demonstrate that a similarly situated bus driver (or employee) from another faith was treated differently than her. The lack of any constitutional

violation plus the lack of any binding case law clearly establishing that a bus driver can permissibly distribute religious to the captive student audience on the bus entitles Supt. Fleenor to qualified immunity. *McElhaney*, 81 F.4th at 556 (citation omitted).

Plaintiff's Equal Protection claim requires her to allege that the way she was treated was disparate to "similarly situated persons…" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). The "disparate treatment" is the threshold inquiry. *Id*. This requires Plaintiff to show that "similarly situated . . . individuals, of a different [religious] viewpoint, have not been subjected to the same alleged treatment by Defendants." *Id*. (citation omitted).

Plaintiff fails to meet this burden at the pleading stage. She alleges that she is similarly situated to "other [bus] drivers who distributed secular holiday items" but were not terminated. (ECF No. 25, PageID.149, ¶ 98). But the proper comparator, i.e., one who is similarly situated, is other bus drivers (or teachers or other employees) that distributed similar *religious* themed messages to students of different religions. *Napolitano, supra*. For example, in *Cahall*, a teacher made certain books about "characters who are LGTBQ+" available in her classroom based "[her] sincerely held moral and religious beliefs" that all children deserved to be respected and loved. 2025 WL 2772519 at *1. In dismissing the teacher's Equal Protection claim, the court held that the teacher failed to identify "other employees engaged in **religiously** motivated activities" that received more favorable treatment. *Id*., at *9 (emphasis added). Specifically, her example of other employees wearing "insignias or symbols of their religious beliefs" did not "constitute[ ] plausible comparator evidence[.]" *Id*., at *9-10. In other words, the teacher failed to show other employees of different religions that made **religious** materials available to their students whereas she was not permitted to. *Id*., at *10; see also *Rouse v. Whitmer*, 2022 WL 2525434 *11 (E.D. Mich. June 13,

2022) (finding no equal protection violation based on religion where both religious and non-religious person were restricted from using the Chapel for activities). This is really "a free-exercise challenge repackaged into an equal protection claim." *Id*. at *12.

Like *Cahall*, Plaintiff here fails to plead that another bus driver (or other employee) handed out messages concerning Jesus (ECF No. 25, PageID14.9, ¶ 99) but was not terminated. The comparison to those that "distributed **secular** holiday items" (*Id.*, ¶ 98) is inapplicable to her claim because such an employee is not a proper comparator. *Cahall*, 2025 WL 2772519 at *10; *compare Klayman v. Loeb*, No. 15 CV 1683, 2016 WL 29228, at *4 (N.D. Ohio Jan. 4, 2016) (Plaintiff "allege[d] no facts whatsoever suggesting that a similarly-situated individual of a **different religious and political viewpoint** was treated differently than he . . .") (emphasis added) *with Maye v. Klee*, 915 F.3d 1076, 1086 (6th Cir. 2019) (equal protection claim survived motion to dismiss because plaintiff alleged "a facially discriminatory distinction between the Nation of Islam and Al-Islam sects" burdening plaintiff's fundamental right).

Thus, Plaintiff fails to meet her burden and Count III fails to state a claim for relief. And since she cannot show a violation of the Equal Protection Clause, Supt. Fleenor is also entitled to qualified immunity. *Williams*, 81 F.4th at 556; Fed. R. Civ. P. 12(b)(6).

### 2. **Procedural Due Process**

In Count VIII, Plaintiff's asserts a "Due Process" claim under § 1983. (ECF No. 25, PageID.155). Plaintiff asserts a procedural due process claim by claiming that the "Defendants denied Plaintiff a hearing and terminated her without fair process." (Id., ¶ 142). However, as an at-will employee, no procedural due process was required.

To state a claim for a procedural due process violation under 42 U.S.C. § 1983, a plaintiff must establish "(1) that [s]he has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment, (2) that [s]he was deprived of this protected interest within

31

the meaning of the Due Process Clause, and (3) that the state did not afford [her] adequate procedural rights prior to depriving him of this protected interest." *Mead v. Rockford Pub. Sch. Dist.*, 800 F. Supp. 3d 836, 851 (W.D. Mich. 2025) (citation omitted). That inquiry begins with determining whether under Michigan law Plaintiff had a protected property interest in continued employment. *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972).

Plaintiff has not alleged whether she is an at-will employee or was employed under a contract. The presumption therefore is that she is an at-will employee. *Eplee v. City of Lansing*, 327 Mich. App. 635, 654; 935 N.W.2d 104 (2019) (citation omitted); *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 766 (6th Cir.2010) (citation omitted). Well-established Michigan law holds that, for purposes of a Fourteenth Amendment procedural due process claim, "an at-will employee" lacks a "property right to continued employment" therefore there is no requirement for procedural due process prior to termination. *Manning v. City of Hazel Park*, 202 Mich. App. 685, 694; 509 N.W.2d 874 (1993). Courts in this Circuit have also held that a bus driver for a school district is an at-will employee. See, e.g., *Howart v. Byron Area Sch. Dist.*, No. 04-73087, 2007 WL 1174885, at *11 (E.D. Mich. Apr. 19, 2007). Because Plaintiff does not allege that she was not an "at-will employee" she "lacked a protected property interest in [her] job" that required due process prior to termination. *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 451 (6th Cir. 2022).

Even if Plaintiff is not an at-will employee, she had an adequate remedy with a state court breach of contact action, and a Fourteenth Amendment claim is precluded. See, e.g., *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1273–74 (6th Cir. 1988); *Heath v. Highland Park Sch. Dist.*, 800 F. Supp. 1470, 1474 (E.D. Mich. 1992); *Carroll v. Knox Cnty. Bd. of Educ.*, No. 3:07-CV-345, 2010 WL 2507046, at *11 (E.D. Tenn. June 17, 2010). Any alleged property interest in her employment "is not remediable in federal court in the first instance." *Machisa v.*

32

*Columbus City Bd. of Educ.*, 563 Fed. App'x 458, 463 (6th Cir. 2014).

Alternatively, Plaintiff received all the due process required under the District's Policies. As bus driver, Plaintiff is a "member[ ] of the support staff[.]" Board Policy 4120.[12] The District's Board of Education delegated the responsibility of terminating "support staff" to Supt. Fleenor. Board Policy 4010. Supt. Fleenor has the authority to investigate possible misconduct. Board Policy 4139. Notice is to be given, and the Plaintiff provided with "the opportunity to respond to the complaint." (*Id*.). Supt. Fleenor provided both notice and the opportunity for Plaintiff to respond to all three incidents of her disseminating candy bags containing religious messages to students on her bus. (Exhibit 8).

Thus, Count VIII fails to state a claim for relief because Supt. Fleenor is entitled to qualified immunity, and therefore Count VIII must be dismissed. Fed. R. Civ. P. 12(b)(6).

### III.    Plaintiff's State Law Wrongful Termination Claim is Barred By Governmental Immunity.

Plaintiff's state law claim for wrongful termination in violation of public policy (Count IX) is barred by governmental immunity. A governmental agency is immune from tort liability if it is engaged in the exercise or discharge of a governmental function. MCL § 691.1407(1). The immunity granted under § 691.1407(1) is expressed in the broadest possible language, extends to all governmental agencies, and applies to all tort liability, including for intentional torts, when the governmental agency is engaged in the exercise of a governmental function. *Nawrocki v. Macomb Cnty Rd. Comm'n*, 463 Mich. 143, 156; 615 N.W.2d 702 (2000). It is undisputed that that "the

---

[12] All cited Policies are publicly available at https://go.boarddocs.com/mi/matta/Board.nsf/Public (click on "Policies" in upper right corner) (last accessed June 2, 2026). *Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *6 (W.D. Mich. Jan. 28, 2022), *report and recommendation adopted*, No. 1:20-CV-1207, 2022 WL 593586 (W.D. Mich. Feb. 28, 2022) ("In deciding a motion to dismiss, a court may judicially notice documents and other information available from reliable sources on the Internet, including government websites.").

operation of a public school is a governmental function." *Nalepa v. Plymouth-Canton Comm. Sch. Dist.*, 207 Mich. App. 580, 587; 525 N.W.2d 897 (1994). Likewise, courts have long held that the hiring, supervision, and discipline of a government employee is the exercise of a governmental function. *Galli v. Kirkeby*, 398 Mich. 527, 537; 248 N.W.2d 149 (1976).

It is well established that a wrongful discharge claim in violation of public policy sounds in tort. *See Phillips v. Butterball Farms, Inc*., 448 Mich. 239, 245-46, 531 N.W.2d 144 (1995). Thus, Plaintiff's wrongful termination in violation of public policy claim is barred by Michigan's governmental immunity statute. *O'Connor v. Redford Twp*., No. 09-10792, 2009 WL 2488095, at *5 (E.D. Mich. Aug. 13, 2009). In *Thompson v. Wayne County Treasurer*, 2008 WL 1986269, at *3 (Mich. Ct. App. May 8, 2008), the Michigan Court of Appeals recognized that the plaintiff's claim of wrongful discharge in violation of public policy sounded in tort and determined that the claim did not fit within any of the statutory exceptions to governmental immunity. The court held that because "only judicially recognized public policy, not statute, recognizes retaliatory termination in general as an actionable tort, and because that tort thus is not among the statutory exceptions to governmental immunity, retaliatory termination . . . is not actionable against a governmental agency." *Id.*

Moreover, Supt. Fleenor is absolutely immune from these claims under Michigan law. "A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability ... if he or she is acting within the scope of his or her judicial, legislative, or executive authority." MCL 691.1407(5). As Superintendent of the District, Supt. Fleenor is immune from tort liability. *Welsh v. Grandville Pub. Schs.*, No. 1:20-CV-1207, 2022 WL 708692, at *5 (W.D. Mich. Jan. 28, 2022), *report and recommendation adopted*, No. 1:20-CV-1207, 2022 WL 593586 (W.D. Mich. Feb. 28, 2022) (citing *Nalepa v. Plymouth–Canton*

34

*Comm. Sch. Dist.*, 207 Mich. App. 580, 525 N.W.2d 897 (1994) and *Soper v. Hoben*, 195 F.3d 845, 851 (6th Cir. 1999)). Count IX must therefore be dismissed based on immunity.

## CONCLUSION

For the foregoing reasons and arguments, the Court should grant the Defendants' motion and dismiss Plaintiff's complaint with prejudice.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: June 15, 2026

## CERTIFICATION OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 11,787 words in the brief.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

## CERTIFICATE OF SERVICE

Travis M. Comstock states that on June 15, 2026, he did serve a copy of **Defendants' Brief in Support** of its **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)** through the Court's CM/ECF system which will provide electronic notice to Plaintiff's counsel at dpeters@pji.org.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
P72025