UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH M. ROBINSON,

Plaintiff,

v.

MATTAWAN CONSOLIDATED SCHOOL DISTRICT, et al.,

Defendants.
______________________________/

Case No. 1:25-cv-1867

HON. JANE M. BECKERING

**OPINION AND ORDER**

Defendant Mattawan Consolidated School District ("the District"), a public school district located in the Village of Mattawan, Michigan, terminated Plaintiff Sarah M. Robinson's employment as a bus driver after she repeatedly distributed candy with religious messages to children who were exiting her bus. Plaintiff filed this suit against the District and its superintendent, Defendant Randall Fleenor ("Superintendent Fleenor"), presenting multiple possible federal and state-law violations premised on her allegation that she was engaged in private religious expression. However, a public-school bus driver does not transform into a private citizen simply because she stopped the bus for children to exit. For the reasons stated more fully herein, the Court grants Defendants' Motion to Dismiss (ECF No. 30) and closes this case.

## I. BACKGROUND

### A. Plaintiff's Factual Allegations

Plaintiff worked as a school bus driver for the District for less than one year, from August 1, 2024 to April 28, 2025 (2d Amend. Compl. [SAC, ECF No. 25] ¶ 16). According to Plaintiff, she had a "solid performance record" (*id.* ¶ 1).

Within a few months of Plaintiff's start date, in November 2024, District Director of Transportation Scott Hitchcock ("Director Hitchcock"), Plaintiff's supervisor, allegedly gave Plaintiff "express verbal permission" to "distribut[e] candy bags with a religious message enclosed so long as participation was optional and disclosed" (*id.* ¶¶ 23, 27). Plaintiff alleges that "[o]ther employees regularly distributed holiday items or shared other secular materials without discipline" (*id.* ¶ 37). According to Plaintiff, she distributed the candy "in as innocuous a manner as possible by leaving separate piles of candy at the exit to the bus and children were given a choice whether to choose a bag that contained a short holiday message or a bag that did not contain a short holiday message and students were not coerced into participating or choosing in any way" (*id.* ¶ 24; *see also id.* ¶¶ 49–52, & 55 (similarly describing how Plaintiff handed out candy)). Plaintiff alleges that—

> the candy with the holiday themed message contained a popular children's story (the "Legend of the Christmas Candy Cane") that arguably is both accurate and historically correct in attributing the "J" shape of the candy cane to the letter "J" and the name of Jesus, in Christian tradition. At other times she had distributed similar messages to the children with more religious value and less historical value such as "God Loves You."

(*id.* ¶ 24, n.1). Plaintiff represents that "[s]ome children chose not to pick any candy; some chose to pick from the pile with a religious message, and some chose to pick from the pile without a religious message" (*id.* ¶ 25). Plaintiff emphasizes that "[a]t all times," she made the candy available "after the bus had stopped as the students were exiting and … already at the destination" (*id.* ¶ 52).

Plaintiff alleges that in January 2025, Superintendent Fleenor "reversed [Director Hitchcock's] guidance" and informed Plaintiff that she "could not reference Jesus at all, even if it should come up naturally or voluntarily" (*id.* ¶¶ 3, 26). Superintendent Fleenor also allegedly informed Plaintiff that she was "violating the Constitution" by "making Christianity the State

religion" (*id.* ¶ 28). Plaintiff learned from Director Hitchcock that "there had been a complaint by the parents of one of her bus students that their Jewish child had received a Christian themed message in his candy, and that she would have to stop handing out candy for Easter and Christmas" (*id.* ¶ 27). Plaintiff alleges that she "terminat[ed] her practice of handing out candy to children" (*id.* ¶ 29).

Plaintiff alleges that her daughter and her daughter's friend—allegedly "on their own volition"— "offered to hand out the bags of candy to the other children over Easter" (*id.* ¶ 30). And on Good Friday, Plaintiff "permitted" her daughter to "distribute the Easter bags instead of having them at the exit to the bus when students exited" (*id.* ¶ 38). Plaintiff emphasizes that she had "not been told that her child could not hand out the candy and in fact other children had handed out candy on that day and others" (*id.* ¶ 32). According to Plaintiff, she herself "did not hand out candy to children after being instructed not to do so" (*id.* ¶ 31).

A few days later, Plaintiff "was told her actions required that she must resign or be fired" (*id.* ¶ 39). Plaintiff alleges that she "asked for multiple accommodations including whether she could keep her job if she stopped handing out candy and made the candy unavailable entirely" (*id.* ¶ 40). Superintendent Fleenor allegedly indicated that "this was not an option because she 'could not be trusted not to speak about Jesus again'" (*id.* ¶ 41).

Defendants conducted a week-long investigation during which Plaintiff was allegedly "questioned, scrutinized, and treated as if she had committed intentional wrongdoing" (*id.* ¶ 42). At a meeting on April 28, 2024, Plaintiff's employment was terminated (*id.* ¶¶ 31, 45). Jay Larner, the District's Assistant Superintendent, signed her termination letter (*id.* ¶ 4). Plaintiff complains that—

- she was not provided with either "written notice of the issue being investigated;"

- she was "not given a fair investigation;"
- she "asked the investigators to review video of the entire incident" and the investigators "declined to look at any video;"
- "required witnesses were not interviewed or assessed;"
- she was not provided with "prior notice of the meeting in which she was terminated;" and
- she was not provided with either union representation or a substitute representative at the meeting

(*id.* ¶ 31; *see also id.* ¶¶ 43–44 (detailing similar complaints)). Defendants reported Plaintiff for "misconduct" to the Michigan Unemployment Insurance Agency; however, according to Plaintiff, "the Agency reversed the denial and granted benefits, finding Defendants could not substantiate misconduct" (*id.* ¶ 57).

**B. Procedural Posture**

Plaintiff initiated this action less than one year later, on December 22, 2025, with the filing of a Complaint (ECF No. 1). She filed a First Amended Complaint on April 29, 2026 (ECF No. 21). And on May 20, 2026, she filed a Second Amended Complaint (ECF No. 25), alleging the following nine overlapping federal and state-law claims:

I. "First Amendment, Free Exercise of Religion (42 U.S.C. § 1983)"

II. "First Amendment, Free Speech/Viewpoint Discrimination (42 U.S.C.A. § 1983)"

III. "Equal Protection, 14th Amendment (§ 1983)"

IV. "Religious Discrimination Against Protected Characteristics as a Motivating Factor"

V. "Failure to Accommodate under Title VII and Elliot Larsen"

VI. "Retaliation under Title VII and Elliot Larsen"

VII. "Religious Discrimination (ELCRA)"

VIII. "Due Process (§ 1983)"

IX. "Wrongful Termination"

Among other forms of relief, Plaintiff seeks money damages and an injunction reinstating her as a bus driver for the District (*id.* ¶¶ 75, 94–95, 107, 118, 134, 140, 148, & 152). Plaintiff does not specify against which Defendant her claims are brought.

In lieu of filing an answer to the Second Amended Complaint, Defendants filed the pending motion to dismiss (ECF No. 30), with a supporting brief (ECF No. 28). Plaintiff filed a response in opposition (ECF No. 39), and Defendants filed a reply (ECF No. 40). Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendants' motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir.

2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A court's review of a Rule 12 motion to dismiss is "generally limited to the four corners of the complaint[.]" *Hester v. Chester Cnty.*, 162 F.4th 780, 784 (6th Cir. 2025) (citing FED. R. CIV. P. 12(d)). Plaintiff references four exhibits within her Second Amended Complaint and her response to Defendants' motion, but she did not attach any exhibits to either submission. Defendants, in turn, attached numerous exhibits to their motion to dismiss.[1] The Sixth Circuit has indicated that a court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). While "this Circuit's case law permits the district court to consider such evidence at the motion to dismiss stage if it is central to the plaintiff's claims, nothing requires the district court to do so." *Wershe v. City of Detroit*, 112 F.4th 357, 373 (6th Cir. 2024). The Court, in its discretion, has constrained its review at this Rule 12 stage to the facial sufficiency of Plaintiff's Second Amended Complaint.

[1] Defendants attached the following eleven exhibits to their motion: the messages allegedly associated with the candy Plaintiff distributed (Defs. Exs. 1–3, ECF Nos. 28-2, 28-3, & 28-4); three "bus videos" (Defs. Exs. 4–6, ECF Nos. 28-5, 28-6, & 28-7); two pieces of correspondence from Superintendent Fleenor (Defs. Exs. 7 & 8, ECF Nos. 28-8 & 28-9); two District Board of Education policies (Defs. Exs. 9 & 10, ECF Nos. 28-10 & 28-11); and an "Enrollment History" (Def. Ex. 11, ECF No. 28-12).

### B. Discussion

Plaintiff's claims can be grouped in three categories: her civil rights claims brought under 42 U.S.C. § 1983, her claims brought under Title VII and/or Michigan's Elliott Larsen Civil Rights Act (ECLRA), and her due process claims.

**1. <u>Plaintiff's § 1983 Claims</u> (Counts I–III)**

Plaintiff's first three claims are brought pursuant to 42 U.S.C. § 1983, which makes "liable" "[e]very person who, under color of" state law, "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]" Section 1983 does not confer substantive rights but merely provides a statutory vehicle for vindicating rights found in the United States Constitution. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). To bring a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020). Plaintiff alleges "First Amendment, Free Exercise of Religion" (Count I), "First Amendment, Free Speech/Viewpoint Discrimination" (Count II), and "Equal Protection, 14th Amendment" (Count III). The Court concludes that all three claims are properly dismissed.

**(a) *Count I***

Plaintiff's claims in Count I and II concern the interplay of the Clauses that appear in the same sentence of the First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech." U.S. CONST. amend. I. The Establishment Clause requires Congress, and the States through the Fourteenth Amendment, to "remain neutral in matters of religion." *Buckley v. Valeo*, 424 U.S. 1, 92 (1976). And the remaining clauses "doubly protect[] religious speech"—"the Free Exercise

Clause protects religious exercises, whether communicative or not, [and] the Free Speech Clause provides overlapping protection for expressive religious activities." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022). Together, "[t]he First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed *or* prescribed by the State." *Lee v. Weisman*, 505 U.S. 577, 589 (1992) (emphasis added).

In Count I ("First Amendment, Free Exercise of Religion"), Plaintiff alleges, in pertinent part,[2] that "PLAINTIFF's private religious expression is fully protected by the First Amendment" (SAC ¶ 63). Plaintiff alleges that "MATTWAN [sic] directly discriminated against PLAINTIFF on the basis of her religion" and that "Defendants penalized Plaintiff for religious exercise without neutrality or compelling justification" (*id.* ¶¶ 66, 69).[3] Plaintiff alleges that "Defendants are a governmental entity and their Superintendent and Assistant superintendents are bound by the First Amendment and other applicable State and federal laws" (*id.* ¶¶ 70, 87).

In support of dismissal, Defendants argue that Plaintiff fails to plausibly allege a Free Exercise claim because she does not identify any official who violated her constitutional right and she fails to sufficiently plead a claim against the District (ECF No. 28 at PageID.186–189). Defendants also argue that even if Plaintiff can overcome her pleading deficiencies, Superintendent Fleenor is entitled to qualified immunity based on application of the Establishment Clause (*id.* at PageID.189–193).

---

[2] Despite titling Count I "First Amendment, Free Exercise," Plaintiff makes numerous references within Count I to *other* laws and legal concepts. This pleading practice is present throughout her claims in the Second Amended Complaint, which is riddled with disparate statements that do not necessarily correlate to the respective titles of her claims. Reading Plaintiff's pleading generously, the Court has isolated Plaintiff's allegations to the appropriate places in this Opinion.

[3] While Plaintiff references her daughter's alleged role in the factual allegations of the Second Amended Complaint, the claims themselves concern only Plaintiff's own rights and Defendants' alleged conduct associated with Plaintiff's purported exercise of her rights.

In response, Plaintiff asserts that she has "clearly identifie[d] the individuals involved, including Superintendent Fleenor and other District Officials and … the actions taken against her" (ECF No. 39 at PageID.278, 285–288). Plaintiff argues that when the allegations are viewed in the light most favorable to her, Superintendent Fleenor is not entitled to qualified immunity (*id.* at PageID.283–286). Regarding the District, Plaintiff asserts both that "the District IS vicariously liable" and that the District's "policy, custom, or practice" is the source of the constitutional violation as "articulated to her by FLEENOR, the Superintendent" (*id.* at PageID.286–289) (emphasis in original).

Defendants are entitled to dismissal of Count I.

***Individual Liability.*** Turning first to individual liability, a plaintiff alleging a § 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. The plaintiff must allege such facts "with particularity." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citation omitted). *See also Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (relying on *Heyne* for same proposition).

Here, other than stating that "Defendants are a governmental entity and their Superintendent and Assistant superintendents are bound by the First Amendment" (SAC ¶ 70), Plaintiff does not identify Superintendent Fleenor within Count I, let alone set forth particular facts therein to demonstrate what he did to violate the Free Exercise Clause. However, drawing all reasonable inferences in Plaintiff's favor, the Court determines that her Free Exercise claim against Superintendent Fleenor rests on her earlier factual allegations that he instructed her not to distribute religious candy and/or "reference Jesus at all" (SAC ¶¶ 26, 28–29).

A plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a governmental entity has burdened her sincere religious practice pursuant to a policy that is not "neutral" or "generally applicable." *Kennedy*, 597 U.S. at 525. If a plaintiff makes such a showing, then the court will find a violation unless the governmental entity can satisfy "strict scrutiny" by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest. *Id.* at 525, 531–32.

The Court assumes that Plaintiff's proselytizing to children is a sincerely held religious practice. *See Lucky v. Landmark Med. of Michigan, P.C.*, 103 F.4th 1241, 1243 (6th Cir. 2024) (explaining that district courts do not have any basis for insisting that a plaintiff explain how her religion has a specific tenet or principle). Plaintiff has also plausibly alleged that the District's policy, as articulated by Superintendent Fleenor, burdened her practice.

That said, "not every burden on religious exercise is unconstitutional." *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 733 (6th Cir. 2021). The Supreme Court has instructed that "[t]he principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause." *Lee*, 505 U.S. at 587 (holding unconstitutional a school district's policy permitting a school principal to invite clergy to give "nonsectarian" invocations and benedictions at graduation ceremonies). "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Id.* (citation omitted). While public-school employees are private citizens, their First Amendment rights of are not "so boundless that they may deliver any message to anyone anytime they wish." *Kennedy*, 597 U.S. at 527.

Plaintiff's claim in this first count (and others) rests on the premise that she was engaged in "private religious expression," "not government speech," because her "nonverbal speech and religious expression occurred after the bus had stopped when the bus driver was a private citizen who was permitted to engage in speech on matters of faith" (SAC ¶¶ 9, 11–12, 63–65, 80–82, 91, 94, 104, 109, 122). Even accepting as true the factual portion of Plaintiff's allegations—that she "at all times" distributed candy only after stopping the school bus (*see id.* ¶¶ 24, 52, 55)—her alleged facts do not support the legal conclusion that her conduct falls within the realm of protected "private" religious expression. *See Iqbal*, 556 U.S. at 678 (instructing that courts need not accept a plaintiff's legal conclusions).

The operational duties of bus drivers have been evaluated in the Sixth Circuit under constitutional standards applicable to state actors, not private citizens. *See*, *e.g.*, *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925 (6th Cir. 2020) (analyzing a § 1983 claim against a school bus driver and school district and treating the bus driver as a state actor whose conduct was subject to constitutional scrutiny); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir. 1995) (analyzing a § 1983 claim against a school bus driver and school district during a medical emergency on the bus and treating the driver as a state actor whose conduct was subject to constitutional scrutiny).

A school bus driver does not transform from a state actor into a private citizen simply because she stopped her bus to let off a child. Rather, the driver's status as a public-school employee and the scope of her duties are intact throughout the stop. Indeed, even though the bus is stationary, this phase of its operation—the loading and unloading of children—implicates significant job duties. Michigan law strictly delineates procedures for school bus drivers when their passengers disembark, requiring activating and deactivating flashing lights depending on (1)

the type of lights with which their buses are equipped; (2) whether pupils are crossing the roadway; (3) the location of the bus, including the applicable speed limit and any nearby intersection that is controlled by a traffic control signal; and (4) whether the school bus is clearly and continuously visible to approaching traffic. MICH. COMP. LAWS § 257.1855 ("Receiving and discharging pupils; duties of drivers and pupils; instruction on school bus etiquette"). A bus driver is not acting as a mere private citizen by stopping the bus for children to exit; instead, her statutory duties are governmental functions that persist throughout the time the bus is stationary.

Plaintiff repeatedly contends that she was acting as a private citizen, just like the football coach in *Kennedy*, which was the 2022 decision where the Court rejected the school district's reliance on the Establishment Clause. *See*, *e.g.*, ECF No. 39 at PageID.282 ("The situation is analogous to Coach Kennedy praying after the game was completed."). However, the facts alleged in this case materially differ from the facts in *Kennedy*.

In *Kennedy*, 597 U.S. at 512–13, 517, 519, Joseph Kennedy lost his job as a high school football coach because he knelt at midfield after games to offer a "personal prayer." The majority of the Supreme Court determined that Coach Kennedy prayed "during a period when school employees were free to speak with a friend, call for a reservation at a restaurant, check email, or attend to other personal matters." *Id.* at 513–14. The Supreme Court observed because he "offered his prayers when students were engaged in other activities like singing the school fight song further suggests that those prayers were not delivered as an address to the team, but instead in his capacity as a private citizen." *Id.* at 530. The Supreme Court concluded that based on the "timing and circumstances" of the prayer, Coach Kennedy was not acting "within the scope of his duties as a coach." *Id.* The Supreme Court decided that Coach Kennedy could not be punished for "engaging

in a brief, quiet, personal religious observance" and ultimately held that he was entitled to summary judgment on his First Amendment claims. *Id.* at 543–44.

Unlike Coach Kennedy, whose prayer was offered during a time when employees were free to attend to their personal lives, Plaintiff was still on the job when she distributed her religious candy. As indicated, she continued to owe a duty of care related to the safe and proper operation of the bus and ensuring students would safely board and disembark. Her role as a District employee and state actor did not end merely because the school bus was stationary. In sum, Plaintiff's allegations in Count I fail to state a plausible claim for relief because her expressive conduct is ineligible for First Amendment protection.

Because Plaintiff's allegations, if accepted, do not plausibly state a violation of the Free Exercise Clause, Superintendent Fleenor is also entitled to qualified immunity. *See Shumate v. City of Adrian*, 44 F.4th 427, 439 (6th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity shields 'government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'")); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

**Monell *Claim.*** Turning next to any potential municipal claim, i.e., a *Monell* claim, a local government unit is considered a "person" under § 1983 and so "can be held liable for constitutional injuries for which it is responsible." *See Greene v. Crawford Cnty.*, 22 F.4th 593, 616 (6th Cir. 2022) (citing, in relevant part, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Whether a school district is to be treated as a municipal corporation or other political subdivision depends, at least in part, upon the nature of the entity created by state law. *Mt. Healthy City Sch. Dist. Bd.*

*of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Michigan's Constitution defines "local government" to mean any political subdivision of the state, including, but not restricted to, "school districts." MICH. CONST. Art. 9, § 33.

Defendants point out that Plaintiff merely references "MATTAWAN" as the alleged violator in her First Amendment claims (ECF No. 40 at PageID.298, referencing SAC ¶¶ 61, ¶¶ 64–68, 78, & 81–85). Assuming that the reference plausibly implicates the District, there is nonetheless no merit to Plaintiff's bald assertion that vicarious liability is an appropriate theory of recovery. Rather, it is well settled that "respondeat superior is not available as a theory of recovery under section 1983." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010). A defendant cannot be held liable under § 1983 "'*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691) (emphasis in original).

*Monell* liability instead depends on whether the plaintiff's constitutional rights have been violated as a result of "a 'policy' or 'custom' attributable" to the defendant. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Here, Plaintiff's claim suffers a fatal flaw. "[T]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.")); *see, e.g.*, *Caraway v. CoreCivic, LLC*, 98 F.4th 679, 687 (6th Cir. 2024) ("[B]ecause the complaint doesn't allege an underlying constitutional violation, those [*Monell*] claims fail.").

Because Plaintiff did not allege a plausible underlying constitutional deprivation in the first instance, *see supra*, any *Monell* claim is likewise properly dismissed.

In sum, Count I is properly dismissed.

**(b) *Count II***

In Count II ("First Amendment, Free Speech/Viewpoint Discrimination"), Plaintiff similarly alleges, in pertinent part, that "MATTAWAN has engaged in unconstitutional viewpoint discrimination against the PLAINTIFF" and that she was "punished because of the religious content of her speech" (*id.* ¶¶ 85–86). According to Plaintiff, her "nonverbal speech and religious expression occurred after the bus had stopped when [she] was a private citizen who was permitted to engage in speech on matters of faith" (*id.* ¶ 91). Plaintiff reiterates that "Defendants are a governmental entity and their Superintendent and Assistant superintendents are bound by the First Amendment and other applicable State and federal laws" (*id.* ¶ 87).

Defendants argue that Plaintiff's Free Speech claim likewise fails because, even assuming Plaintiff is able to overcome her pleading deficiencies, her "speech" is not protected where she spoke pursuant to her official duties as a District employee (ECF No. 28 at PageID.193–197). Defendants emphasize that as a bus driver, Plaintiff was in a "significant public-facing role with daily public contact with school-aged children and parents" (*id.* at PageID.197).

In response, Plaintiff argues that Defendants' assertion that her speech is not protected because it occurred pursuant to her official duties "relies on factual assumptions that cannot be resolved at the pleading stage" (ECF No. 39 at PageID.278–283). Plaintiff emphasizes that "she distributed the candy after the bus was stopped," and she opines that it is "difficult to categorize bus drivers as 'representatives of the school'" (*id.* at PageID.289–291).

Defendants are entitled to dismissal of Count II.

In considering free-speech claims brought by government employees, the threshold inquiry is whether the public employee spoke as a private citizen, and not pursuant to her official duties. *See Kennedy*, 597 U.S. at 527–28 (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563 (1968); and then citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *Kennedy*, 597 U.S. at 528 (stating the question as: "Did Mr. Kennedy offer his prayers in his capacity as a private citizen, or did they amount to government speech attributable to the District?"); *Myers v. City of Centerville*, 41 F.4th 746, 760 (6th Cir. 2022) (citing *Garcetti*, 547 U.S. at 421). "Whether an employee engaged in protected speech is a question of law." *Stanalajczo v. Perry*, 174 F.4th 968, 974 (6th Cir. 2026).

Where "a public employee speaks 'pursuant to [her] official duties,' ... the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." *Kennedy*, 597 U.S. at 527 (quoting *Garcetti*, 547 U.S. at 421). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421–22. Instead "[i]t simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 422.

In reviewing a public employee's statement to determine whether the statement receives First Amendment protection, courts consider not only the statement's content but also its "context—including to whom the statement was made." *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010). *See also Lane v. Franks*, 573 U.S. 228, 239–40 (2014) (explaining that its holding in *Garcetti* did not turn on the fact that the speech at issue "concerned the subject matter of [the plaintiff's] employment" and that the "critical question" is "whether the

speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."). For example, in examining the context of Coach Kennedy's speech (his prayer), the Supreme Court distinguished between religious speech made in private (after the football game concluded with no players around) and a "captive audience" that "involve[ed] students." *Kennedy*, 597 U.S. at 525.

In this case, as set forth in the Second Amended Complaint, the audience for her speech was the captive schoolchildren assigned to ride her bus. As Defendants emphasize, "her official position/duty as a bus driver is the only reason that she had access to the students on the bus" (ECF No. 28 at PageID.195). Plaintiff's factual allegations, taken as true, do not support the legal conclusion that she spoke to her passengers in the confines of the school bus in her capacity as a private citizen; rather, the speech owed its existence to her employment and amounted to speech attributable to the District. Count II fails to state any plausible claim against either Superintendent Fleenor or the District and is properly dismissed.

**(b)** ***Count III***

In Count III ("Equal Protection, 14th Amendment"), Plaintiff alleges, in pertinent part, that "Defendants selectively enforced rules against Plaintiff based on religious viewpoint" and "treated Plaintiff differently than comparators such as bus drivers who distributed secular holiday items with no discipline" (SAC ¶¶ 97–98). According to Plaintiff, she was "[t]erminated from her employment solely due to the religious emanations from the history she was showing the children" (*id.*).

Defendants argue that Plaintiff fails to plausibly allege an equal protection claim because she fails to identify a similarly situated bus driver (or employee) from another faith who was treated differently than her (ECF No. 28 at PageID.200–202).[4]

In response, Plaintiff contends that alleging "that she was treated differently because of her religious expression" is "sufficient to state a plausible Equal Protection claim" (ECF No. 39 at PageID.284).

Defendants are entitled to dismissal of Count III.

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either [1] burdens a fundamental right, [2] targets a suspect class, or [3] has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).

Here, Plaintiff's claim is apparently predicated on her First Amendment rights.[5] However, because Plaintiff has failed to plausibly plead a protected right under the First Amendment, she

---

[4] Defendants also argue that Plaintiff's equal protection claim should be dismissed because the claim concerns the "same conduct" as her First Amendment claims (ECF No. 28 at PageID.200, citing *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008)), but this argument appears to be an extrapolation of Sixth Circuit caselaw discussing the proper constitutional source for deliberate-indifference claims by prison inmates. Given the resolution herein, the Court has not given the argument further treatment.

[5] Plaintiff does not purport to be a member of a suspect class, and, to the extent her equal-protection claim could be construed as a right to be free from arbitrary "singling out," a phrase that she uses elsewhere in her pleading (SAC ¶¶ 64 & 81), such claim is unavailable to her. *See generally Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *see Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 606 (2008)

concomitantly fails to plausibly plead inequal treatment based on a deprivation of such right. *See, e.g.*, *Chaffin v. Naeyaert*, No. 2:24-cv-195, 2024 WL 5087018, at *4 (W.D. Mich. Dec. 12, 2024) (holding that the plaintiff failed to state an equal protection claim where he failed to plausibly allege an accompanying violation of established rights); *Robinson v. Jackson*, No. 1:14-CV-115, 2014 WL 4988152, at *5 (S.D. Ohio Oct. 6, 2014) (holding that the plaintiff failed to state an equal protection claim where he failed to plausibly allege an accompanying violation of established rights), aff'd, 615 F. App'x 310 (6th Cir. 2015). Plaintiff's mere allegation that bus drivers were treated differently is not sufficient to support an equal protection claim. *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (affirming the district court's conclusion that "the plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently"). Therefore, the Court finds that Plaintiff fails to state an equal protection claim based on the deprivation of a fundamental right. Count III is properly dismissed.

**2. <u>Plaintiff's Title VII & ELCRA Claims</u> (Counts IV–VII)**

Title VII prohibits an employer from discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's … religion[.]" 42 U.S.C. § 2000e-2(a)(1). Michigan's ELCRA similarly provides that "[a]n employer shall not ... discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]" MICH. COMP. LAWS § 37.2202(1)(a). The Sixth Circuit has instructed that "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012); *see also*

---

(recognizing that a class-of-one theory of equal protection in the public employment context—that is, "a claim that the State treated an employee differently from others for a bad reason, or for no reason at all"—is simply "contrary to the concept of at-will employment").

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) ("[T]he ELCRA analysis is identical to the Title VII analysis."). Plaintiff brings Count IV (Religious Discrimination) under Title VII, alleges combined claims in Count V (Failure to Accommodate) and Count VI (Retaliation), and brings Count VII (Religious Discrimination) under ELCRA.

***(a) Counts IV & VII***

In Count IV ("Religious Discrimination"), Plaintiff alleges, in pertinent part, that "MATTAWAN's decision to enforce a policy targeting an individual because she identified as Christian and expressed Christian beliefs, and banning private, demonstrative religious expression and speech by PLAINTIFF but not other similarly situated employees who also engaged in private, demonstrative religious expression constitutes disparate treatment under Title VII" (SAC ¶ 104).

Similarly, in Count VII ("Religious Discrimination (ELCRA)"), Plaintiff alleges, in pertinent part, that Defendants afforded "inequitable treatment [to] Christians who expressed their beliefs [as] compared to others who expressed their beliefs and were not treated differently or worse" (*id.* ¶ 138).

Defendants argue that Plaintiff fails to plausibly allege a discrimination claim under either Title VII or ELRCA because she has not pleaded any similarly situated comparators (ECF No. 28 at PageID.181–183).[6]

As Defendants point out in reply (ECF No. 40 at PageID.297), Plaintiff does not offer any response to Defendants' arguments.

Defendants are entitled to dismissal of Counts IV and VII.

[6] Defendants also argue that the District had a legitimate reason for terminating her employment that overcomes any prima facie case she may establish (ECF No. 28 at PageID.182–183), an argument that this Court need not address, given the resolutions herein.

Plaintiff's failure to respond to Defendants' arguments for dismissal means that she has effectively forfeited these claims. *See KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 463 (6th Cir. 2019) ("A party's failure to respond to an argument raised in a motion to dismiss results in the forfeiture of that argument.") (citing *Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013)); *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the defendant's motion to dismiss).

Even if Plaintiff had not forfeited her claims, her bald references to "others" who were not disciplined (SAC ¶¶ 104 & 138) are wholly insufficient to state a religious disparate treatment claim. *See generally Haji v. Columbus City Schs.*, 621 F. App'x 309, 315 (6th Cir. 2015) (delineating the elements of a disparate treatment claim, including "that similarly situated non-protected employees were treated more favorably"). While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a plaintiff's complaint must provide "an adequate factual basis" to support these elements. *James v. Hampton*, 592 F. App'x 449, 460 (6th Cir. 2015) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002)). Plaintiff has not alleged any "factual content" from which this Court could "draw the reasonable inference" of religious discrimination. *See Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In short, Counts IV and VII are properly dismissed.

***(b) Count V***

In Count V ("Failure to Accommodate under Title VII"), Plaintiff alleges, in pertinent part, that "MATTAWAN failed to offer or even consider PLAINTIFF'S requests for reasonable accommodation that would have allowed her to exercise her sincerely held religious belief, engage

in lawful speech, and avoid adverse employment actions as other similarly situated persons were permitted to do" (SAC ¶ 112). According to Plaintiff, she requested "basic religious accommodation, specifically the ability to express her faith respectfully" (*id.* ¶ 114). Plaintiff alleges that "Defendants refused to engage in any interactive process and instead terminated Plaintiff" (*id.* ¶ 113).

Defendants argue that Plaintiff fails to plausibly allege an accommodation because she fails to either identify "other" employees or describe what their "demonstrative religious expression" contained or exhibited (ECF No. 28 at PageID.181–182).[7]

In response, Plaintiff argues that whether she "created a substantial disruption to the learning environment at MATTAWAN is a question of fact for the finder of fact, not for the court on a Summary Disposition or Motion to Dismiss" (ECF No. 39 at PageID.279–280, referencing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969) (addressing restrictions of student speech)).

Defendants are entitled to dismissal of Count V.

"The heart of the failure-to-accommodate claim is that an employer discharges (or otherwise discriminates against) an employee for failing a job-related requirement instead of abiding by its 'statutory obligation to make reasonable accommodation for the religious observances' of its employees." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943–44 (6th Cir. 2024)

---

[7] Defendants also argue that both Counts V and VI must be dismissed because Plaintiff failed to allege that she exhausted her administrative remedies before bringing her Title VII claims (ECF No. 28 at PageID.180–181, relying on 42 U.S.C. § 2000e-5(e)(1)). Plaintiff claims to have attached to her response a copy of her right-to-sue letter from the Equal Employment Opportunity Commission (ECF No. 39 at PageID.277). Again, Plaintiff did not attach any exhibits to her response. Nonetheless, Defendants indicate in reply that they have been "made aware of the EEOC right-to-sue letter and agree that Plaintiff exhausted her administrative remedies" (ECF No. 40 at PageID.297). Consequently, the Court declines to give Defendants' exhaustion argument further treatment.

(quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 (1977)). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). *See generally Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (per curiam) (explaining that "undue hardship" is shown "when a burden is substantial in the overall context of an employer's business").

Plaintiff alleges that Defendants failed to accommodate proselytizing—"the ability to express her faith respectfully" (SAC ¶ 114). The Court again assumes that proselytizing is her sincerely held religious practice. *See Lucky*, 103 F.4th at 1243. But the Court cannot overlook the complete lack of factual content about any accommodation request. For example, in *Savel*, 96 F.4th at 944, the alleged facts indicated that the plaintiffs submitted requests for a religious exemption to their employer's COVID vaccine mandate. Here, Plaintiff alleges that she "asked for multiple accommodations including whether she could keep her job if she stopped handing out candy and made the candy unavailable entirely" (SAC ¶ 40). Merely ending her candy-distribution practice is not an accommodation. And asking the District if she could just "keep her job" is not an accommodation request. The Second Amended Complaint is wholly bare of any factual detail supporting an accommodation request, let alone "multiple accommodations" or any interaction at all. *Cf. Savel v. MetroHealth Sys.*, No. 24-4025, 2025 WL 1826674, at *2 (6th Cir. July 2, 2025) (indicating that it has "never recognized" an "interactive process" requirement under Title VII). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. PRO. 8(a)(2)). Count V is properly dismissed.

***(c) Count VI***

In Count VI ("Retaliation under Title VII"), Plaintiff alleges, in pertinent part, that "MATTAWAN retaliated against the PLAINTIFF … when it took adverse employment action and when it unlawfully ordered her to curtail her free speech and religious practice rights in part on the basis of her status as a Christian" and "based on her exercise of permitted speech, and on the basis of her religious beliefs and exercise" (SAC ¶¶ 123–24).

Defendants argue that Plaintiff fails to plausibly allege a retaliation claim because she fails to identify any similarly situated employees and the District's legitimate reason for terminating her overcomes any prima facie case she may establish and was not pretextual (ECF No. 28 at PageID.185–186).

In response, Plaintiff argues that her retaliation claim "remain[s] viable" because "there is no authority that the potential threat of litigation constitutes a 'significant interference' with the learning environment" (ECF No. 39 at PageID.284–285).

Defendants are entitled to dismissal of Count VI.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. The ELCRA similarly provides that "a person shall not … [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MICH. COMP. LAWS § 37.2701(a).

To succeed on a First Amendment retaliation claim, a plaintiff must prove that "(1) he engaged in activity protected by the First Amendment; (2) the defendant caused the plaintiff to be subjected to an adverse action that would likely deter a person of ordinary firmness from continuing his protected activity; and (3) the defendant's decision to subject the plaintiff to that adverse action was motivated, at least in part, by the plaintiff's protected activity." *Fambrough v. City of E. Cleveland*, No. 25-3300, ___ F.4th ___, 2026 WL 2949463, at *7 (6th Cir. Oct. 1, 2026). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (en banc) ("[C]ertain provisions of the Constitution define individual rights with which the government generally cannot interfere—actions taken pursuant to those rights are 'protected' by the Constitution.").

Here, Plaintiff, who has failed to plausibly plead a protected right under the First Amendment, concomitantly fails to plausibly plead retaliation based on such right. That an adverse action was motivated at least in part by a plaintiff's protected conduct presupposes the existence of protected conduct in the first place. *See*, *e.g.*, *Heyward v. Cooper*, 88 F.4th 648, 658–59 (2023) (dismissing certain derivative retaliation claims). Count VI is properly dismissed.

**3. <u>Plaintiff's Due Process Claims</u> (Counts VIII & IX)**

Last, in Count VIII ("Due Process"), Plaintiff alleges, in pertinent part, that "Defendants denied [her] a hearing and terminated her without fair process" (SAC ¶ 142). Similarly, in Count IX ("Wrongful Termination"), Plaintiff alleges, in pertinent part, that her employment was terminated "in violation of her contract of employment with the Defendant, and in violation of district employment rules published on the MATTAWAN school district web site" (*id.* ¶ 150).

Defendants argue that Plaintiff fails to plausibly allege a due process claim because, as an at-will employee with no cognizable property interest in her continued employment, no procedural due process was required (ECF No. 28 at PageID.202–204). Defendants argue that Plaintiff also

fails to plausibly allege a wrongful termination claim because such claim is barred by governmental immunity (*id.* at PageID.204–206).

As Defendants point out in reply (ECF No. 40 at PageID.306–307), Plaintiff does not offer any response to their arguments and effectively forfeited these claims, too. *See KSA Enters.*, 761 F. App'x at 463; *Notredan*, 531 F. App'x at 569; *Doe*, 507 F.3d at 1007–08. Counts VIII and IX are properly dismissed.

**4. <u>Dismissal with Prejudice</u>**

Defendants seek dismissal of Plaintiff's claims with prejudice (ECF No. 28 at PageID.206; ECF No. 30 at PageID.243; ECF No. 40 at PageID.307). "Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011). But "[t]here are important procedural requirements to follow," including "a formal motion to amend." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019). "[I]t is not the district court's role to initiate amendments." *Justice v. Petersen*, No. 21-5848, 2022 WL 2188451, at *4 (6th Cir. June 17, 2022) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008)).

Plaintiff has twice utilized her opportunity to amend her original Complaint, and she has neither moved for leave to file a third amended complaint nor supplied a proposed third amended complaint for the Court's review. *See* W.D. Mich. LCivR 5.7(f) (requiring a movant's proposed document to be "attached as an exhibit to the motion seeking leave to file"). Consequently, the Court agrees that dismissal with prejudice is appropriate. *See*, *e.g.*, *Mitchell v. City of Benton Harbor*, 137 F.4th 420, 442 (6th Cir. 2025) (finding no abuse of discretion where the district court

dismisses an amended complaint with prejudice where the plaintiffs "never explained what would be accomplished by amendment, nor did they attach an amended complaint (as required by the local rules)"); *Crosby, supra* at 627–28 (citation omitted) ("[I]f a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."); *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 624 (6th Cir. 2021) (holding that a district court does not abuse its discretion in dismissing an amended complaint with prejudice where a plaintiff never moves for leave to file a second amended complaint); *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2013) ("A district court does not abuse its discretion if it denies a plaintiff permission to amend his complaint without reason when the plaintiff has already amended once and then subsequently fails to file a proper motion justifying another amendment.").

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 30) is GRANTED.

Because this Opinion and Order resolves all pending claims, a corresponding Judgment will also be entered. *See* FED. R. CIV. PRO. 58.

Dated: October 22, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge